[Civ. No. 15683. Third Dist. May 30, 1979.]

DANIEL VISNICH, Plaintiff and Appellant, v.
COUNTY OF SACRAMENTO, et al.,
Defendants and Respondents.

**COUNSEL**

Nathaniel S. Colley for Plaintiff and Appellant.

John B. Heinrich, County Counsel, for Defendants and Respondents.

**OPINION**

**PARAS, J.**—Plaintiff, individually and on behalf of all similarly situated taxpayers in Sacramento County, instituted this action for recovery of property taxes alleged to have been levied illegally. After the trial court sustained a demurrer challenging the class action aspect of the lawsuit, an amended complaint was filed wherein causes of action for tax refund were alternatively asserted on behalf of the plaintiff individually and of the class. The trial court struck the class cause from the amended complaint and the case proceeded to a nonjury trial.

The court ultimately concluded that the contested tax levy was legal and entered judgment for defendants. Plaintiff appeals, contending: (1) The trial court erred in holding that a tax refund may not be secured by way of a class action lawsuit; (2) the trial court made adverse findings on issues which had already been resolved in plaintiff's favor by admissions in the answer; (3) the findings are not supported by the evidence.

## I.

Plaintiff's lawsuit was prompted by his dissatisfaction over plans discussed at numerous Sacramento County School Board meetings concerning acquisition of land and erection thereon of an administrative headquarters building for the offices of the county board of education and the county school superintendent. Pursuant to these plans, from 1969 through 1975, various portions of the taxes levied against property owners for county school administration were allocated for accounting purposes to an item referred to as "new facility" in the board of education's yearly budgets. The tax revenues thus attributed to the proposed project included $50,403 in the fiscal year 1969-1970, $844 in 1970-1971, $404 in 1971-1972, $234,469 in 1972-1973, $234,500 in 1973-1974, and $251,300 in 1974-1975.

Plaintiff, an employee of the Legislature and homeowner, who has long advocated regionalization of school administration in lieu of the existing system of county-wide management, interpreted the "new facility" item in the yearly budgets as representing an illegal special levy for "capital outlay." It was stipulated at trial that the property tax statements sent to county taxpayers for the years in question reflected only a general levy for "county school administration" and indicated no special levy for capital outlay. However, plaintiff produced evidence that a part of the $769,822 earmarked in the school board's 1974-1975 budget for capital outlay, along with a portion of the $518,522 budgeted for capital outlay in the previous fiscal year, could have related to and included the proposed building project. Plaintiff also produced evidence that the adopted budgets of the school board showed separate tax rates applicable to the proposed administrative complex, although an assistant county controller testified that these itemizations were prepared by his office merely as a means of assisting the board of supervisors in determining the overall tax rate which they would have to levy for "county school administration."

"County school administration" represented one of four main items included in the county school superintendent's yearly budgets; the others were "regional occupation center," "juvenile hall," and "children's institution." The superintendent's proposed yearly budgets included an itemization of expenditures incidental to each of these four county-wide services which his office performed. To facilitate budgetary analysis, the itemization was grouped into such categories as salary, travel, publication, and capital outlay. The provision for capital outlay included expenditures for office equipment, furniture, automobiles, and, conceiv-

ably, construction of a new administrative housing facility. A separate property tax was not levied in fiscal years 1969-1970 through 1974-1975 for each itemized expenditure in the budgets. Instead, a single levy was made each year for "county school administration" to afford funding for the various programs and services of both the school board and the superintendent.

At the time of trial in May 1975, construction of the proposed administrative headquarters had not yet been undertaken. Approximately one month later, however, the school board entered into a lease-purchase agreement with a private lessor who agreed to construct an office-warehouse complex and lease it to the board for a minimum of 10 years. The building has since been completed and houses the offices of both the board and the superintendent.[1] The record does not indicate whether tax revenues originally earmarked for the item known as "new facility" in the county school board's yearly budgets have been reapplied toward the monthly rent obligation of $24,952 arising from this lease-purchase agreement.

## II.

Plaintiff's lawsuit is predicated upon two related contentions. The first is that over an unspecified number of years the county board of education caused a *special* property tax to be levied for construction of the proposed administrative headquarters. The second is that the alleged special levy was illegal because the board lacked the power to acquire and hold real property for purposes of housing the offices of the superintendent of schools. This latter contention is based upon Education Code section 1042 (formerly § 653), subdivision (c),[2] which empowers a county board of education to acquire, hold and convey real property for the purpose of housing the offices and services of the county superintendent of schools *provided* that all the duties and functions of the county board of supervisors specified in section 1080 (formerly § 671) have been transferred to the county board of education.[3] Plaintiff urges that compliance with section 1042, subdivision (c), and section 1080 was never achieved.

---

[1] This information is contained in a posttrial document included in the record on appeal. It is mentioned in the respondent's brief and not contested in appellant's closing brief. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 428, pp. 4394-4395.)

[2] All section references henceforth are to the Education Code unless otherwise noted.

[3] Section 1042, subdivision (c), reads: "In the name by which the board of education is designated, acquire, lease, lease-purchase, hold and convey real property for the purpose of housing the offices and the services of the county superintendent of schools, except that

A.  *Plaintiff's Attack on the Findings.*

Testimony in the trial court focused on the issue of whether property taxes levied to fund the county school administration budget for the fiscal years 1969-1970 through 1974-1975 included a separate "capital outlay" levy earmarked for construction of the proposed administrative head-quarters. Plaintiff argued that a special levy for such a purpose had been imposed in these years, while defendants maintained that the attribution of contemplated tax revenues to an item known as "new facility" in the board of education's yearly budgets merely represented an administrative allocation of revenues actually raised under the general levy for county school administration.

The trial court found that a property tax had not been levied for the special purpose of constructing an administrative headquarters for county school officials. Plaintiff attacks this finding as unsupported by the evidence. The trial court also found untrue the allegations that the county board of education had collected several hundred thousand dollars for the sole purpose of acquiring land and erecting an administrative facility, and that this contemplated project would be completed unless county school officials were enjoined. Plaintiff complains that these latter findings involved matters which had already been resolved in his favor by admissions contained in defendants' answer to the amended complaint.

■ We address initially the second aspect of the attack upon the findings. Plaintiff's first amended complaint alleged that the board of education, with the assistance of the county supervisors, had collected several hundred thousand dollars from county taxpayers for the sole purpose of purchasing land and constructing a new administrative complex. The amended complaint also alleged that unless enjoined, defendants would continue to collect the assertedly illegal tax and would pursue plans for the new administrative headquarters. In their answer defendants denied that the contested tax levy was for the sole purpose of acquiring land and constructing an administrative headquarters, but admitted that they would continue to levy and collect taxes for county school operations and that they would either purchase or otherwise acquire land and buildings to house the offices of the county school superintendent. The answer thus effectively controverted plaintiff's substantive allegations and the contention to the contrary lacks merit.

this subdivision shall only apply to such county boards of education to which all the duties and functions of the county board of supervisors have been transferred pursuant to Section 1080."

(See *Elliott* v. *Bertsch* (1943) 59 Cal.App.2d 543, 546-547 [139 P.2d 332].) The trial court's findings resolved justiciable matters properly preserved for trial.

█ Plaintiff's contention that the findings are unsupported by the evidence is primarily directed at the trial court's determination that a special tax levy was never imposed for the purpose of funding the proposed administration center. Without further explication, plaintiff argues that there is uncontroverted evidence that "the tax ... . collected for capital outlay was principally for the construction of a building."

█ It is incumbent upon an appellant who claims evidentiary insufficiency to set forth the evidence supporting the judgment and indicate wherein it is insufficient. (*Rodriguez* v. *North American Rockwell Corp.* (1972) 28 Cal.App.3d 441, 447 [104 Cal.Rptr. 678].) █ In addition to ignoring this fundamental appellate rule, plaintiff has failed to set forth any evidence which he considers to support his own position on the issue. This dual omission alone warrants survival of the presumption that the evidence supports the contested findings. (See *Hickson* v. *Thielman* (1956) 147 Cal.App.2d 11, 15 [304 P.2d 122].)

In any case, the evidence hereinabove reviewed supports the findings. Plaintiff's assertion that a tax was levied and collected specifically for "capital outlay" is negated by evidence that only general taxes were levied; "capital outlay" merely comprised one of the items in the school board's annual budget, which was funded by a general tax levy applicable to "county school administration." Plaintiff conceded at trial that the yearly tax statements sent to county taxpayers did not reflect a separate tax levy for "capital outlay." An assistant county controller testified that although the adopted annual budgets of the school board showed separate tax rates applicable to the proposed construction project, these rates were merely estimations prepared by his office to assist the board of supervisors in determining the overall tax rate required to fund the annual budget. This constitutes substantial evidence to support the challenged findings. (*Associated Creditors' Agency* v. *Davis* (1975) 13 Cal.3d 374, 382-383 [118 Cal.Rptr. 772, 530 P.2d 1084].)

B. *Transfer of Duties and Functions Pursuant to Section 1080.*

The trial court found that the board of supervisors had transferred all duties and functions of an educational or recreational nature to the school

board pursuant to section 1080[4] subject only to a reservation of concurrent control over community recreation activities. Although plaintiff's attack upon this finding is contained in his discussion on evidentiary insufficiency, the gist of the contention is that retention of concurrent control over community recreation functions negates compliance with section 1080[5] and nullifies the applicability of section 1042, subdivision (c). In effect, plaintiff argues that there could be no "transfer" of supervisorial duties and functions within the meaning of section 1080 so long as the board of supervisors retained concurrent control over *any* of the activities therein described.

In the trial court, defendants sought to prove compliance with subdivision (c) of section 1042 by introducing copies of three resolutions passed over a span of six years by the board of supervisors for the purpose of transferring the functions described in section 1080. Plaintiff

[4]The trial court's finding recites literally that the various supervisorial duties and functions were transferred pursuant to subdivision (c) of section 1080. This is an obvious inadvertence since *all* the duties and functions described in subdivisions (a) through (e) of section 1080 must be transferred before a county school board is empowered by section 1042 to acquire and hold land for purposes of housing the offices of the county school superintendent. The reference to subdivision (c) probably resulted from the fact that it is *subdivision (c)* of section 1042 which sets forth the requirement regarding transfer of supervisorial duties and functions.

[5]Section 1080 reads as follows:

"The county board of supervisors, by resolution, may transfer all of the following duties and functions of the county board of supervisors to the county board of education:

"(a) Approval of the county superintendent's estimate of anticipated revenue and expenditures pursuant to Section 1042 following which it shall be filed with the county board of supervisors.

"(b) Allowance of the actual and necessary travel expenses, the expenses of the office of the county superintendent of schools, and the expenses of providing housing for all the services of the county superintendent of schools pursuant to Sections 1200, 1201, 1202, and 1203.

"(c) By agreement with the county board of education, any other duties and functions of an educational, or educational and recreational, nature which by law are required or permitted to be performed by the county board of supervisors.

"(d) By agreement with the county board of education, in addition to the functions specified in Section 1043, any duties and functions relative to the organization or reorganization of school districts and community college districts.

"(e) By agreement with the county board of education, the community recreation functions authorized by Chapter 10 (commencing with Section 10900) of Part 7 of this division.

"The transfer of duties and functions under the provisions of this article shall not alter the requirement that the expenses for such duties and functions be paid out of the county general fund as provided elsewhere in this code, provided however that the county board of supervisors and the county board of education may agree that all or any portion of the expenses for such duties and functions which are by law required or permitted to be paid from the county general fund shall be included in that part of the single budget prepared by the county board of education for which a county tax is levied pursuant to Section 1623."

does not contest the resolutions passed in June 1967 and September 1969, wherein the duties and functions set forth in subdivisions (a), (b) and (d) of section 1080 were transferred. He focuses his attack upon the resolution passed in August 1973 by which the supervisors undertook to transfer the duties and functions described in subdivisions (c) and (e) of section 1080 relating to activities of an educational and recreational nature.[6] The attack is based upon a proviso in the resolution relative to the "community recreation functions" of subdivision (e).[7] This proviso states:

"BE IT FURTHER RESOLVED that the transfer of community recreation functions authorized by Chapter 6 (commencing with Section 16651) of Division 12 of the Education Code of the State of California and implemented by this Resolution . . . shall not preclude the Board of Supervisors from concurrently exercising such community recreation functions authorized by said Education Code provisions as shall be deemed appropriate by the Board of Supervisors for the conduct of County affairs; . . ."

Plaintiff relies upon the fact that there is no evidence that the school board has ever attempted to operate any county recreational facilities since the passage of the August 1973 resolution. He apparently construes section 1080, subdivision (e), to require a total abdication of control by county boards of supervisors over all county recreational facilities if the transfer of functions described by that subdivision is to be effective. This proffered construction of section 1080 is offered without decisional authority and with no inquiry into the legislative intent underlying the statute. In addition, plaintiff has overlooked the fact that there is no evidence showing that county school officials have not assumed some

[6]In their August 1973 resolution the supervisors left no doubt as to their intention in transferring the remaining functions described in subdivisions (c) and (e) of section 1080. On page 2 of their resolution it is provided: "BE IT FURTHER RESOLVED that it is the *specific intent of the Board of Supervisors of the County of Sacramento that by adoption of this Resolution all the duties and functions of the County Board of Supervisors have been transferred to the County Board of Education pursuant to Section 671 [1080] in order to vest in the Sacramento County Board of Education the specific authority to acquire, hold and convey real property for the purpose of housing the offices and services of the Sacramento County Superintendent of Schools as specified in Section 653 [1042] of the Education Code of the State of California; . . ."

[7]Defendants suggest that plaintiff stipulated at trial that the three resolutions admitted into evidence effectively transferred all the duties and functions described by section 1080. The stipulation to which they refer, however, merely provided that defendants would rely upon the resolutions in proving that compliance with section 1080 had been effected to the exclusion of other evidence.

degree of control over the "community recreation functions" referred to in subdivision (e).

Little if any mention of section 1080 has been made in case law since its enactment in 1963 (Stats. 1963, ch. 1921, § 1, pp. 3945-3946); legislative history does not, however, suggest that it was intended to compel county supervisors to surrender entire and exclusive control over the duties and functions therein enumerated. Section 1080 was an outgrowth of recommendations made in 1963 by the Senate Factfinding Committee on Education. Chapter 4 of the committee's report, dealing with problems related to the office of the county superintendent of schools, suggested that time, effort and money could be saved if more freedom were afforded to county school officials in their management of school operations. (Sen. Factfinding Com. Rep. on Education, ch. 4, p. 35, Appen. to Sen. J. (1963 Reg. Sess.).) The report recommended, inter alia, that the county board of education assume "all *educational* functions now performed by boards of supervisors, . . ." (Italics added.) Pursuant to this recommendation, section 1080 was enacted, obviously to allow a transfer by county supervisors of various functions of an *educational* nature so as to afford a *limited* degree of fiscal and managerial freedom to county school authorities in dealing with matters within their own cognizance. (See 48 Ops.Cal.Atty.Gen. 64, 67 (1966).)

■ The legislative history of section 1080 thus suggests that its framers (1) did not contemplate the transfer to school authorities of such duties and functions as are unrelated to educational objectives, and (2) envisioned that control over duties and functions having both educational and noneducational significance might be shared. Accordingly, retention of concurrent control by county supervisors over "such community *recreation* functions . . . as shall be deemed appropriate . . . for the conduct of County affairs" (italics added) as provided for in the August 1973 resolution, would not negate compliance with section 1080 if the duties and functions over which concurrent control were retained had both educational *and* noneducational ramifications.

Additional evidence that the framers of section 1080 contemplated a possible retention of some concurrent control over certain of the functions therein described is provided by another section of the Education Code. The "community recreation functions" to which subdivision (e) of section 1080 refers are delineated in chapter 10 of part 7 of division 1 of the code. Section 10903 (formerly § 16653.5) of chapter 10 provides: "Upon the transfer of duties and functions of the county board

of supervisors to the county board of education, the county board of supervisors *may* provide by agreement with the county board of education that the county board of education will perform all or any portion of the duties and functions of the county under this chapter." (Italics added.) Section 10903 thus suggests that even after a transfer of duties and functions has been effected pursuant to section 1080, it remains for county supervisors and county school officials to agree upon the sharing of responsibility for community recreational activities. Inferably, the parties may provide, as they have here, for the exercise of concurrent control over certain community recreation functions.

If possible, a statute should be interpreted to produce a reasonable result; the consequences of any particular situation must be considered. (*Anderson Union High Sch. Dist.* v. *Schreder* (1976) 56 Cal.App.3d 453, 460 [128 Cal.Rptr. 529].) Under plaintiff's proffered construction of section 1080, county supervisors seeking to vest the county board of education with the powers embodied in section 1042, subdivision (c), would have to surrender to the school board all responsibility for operation of county recreational facilities, even those entirely foreign to education. The incongruity of such a result lends further support to the propriety of the trial court's construction of section 1080.

Finding ourselves in agreement with the able trial judge, we too construe section 1080 to permit shared control over county recreational facilities, without nullifying the efficacy of section 1042, subdivision (c).

### III

We have disposed of the substantive issues. Accordingly, we need not reach plaintiff's class action contention.

The judgment is affirmed.

Puglia, P. J., and Janes, J., concurred.