[Civ. No. 5067. Fifth Dist. Nov. 30, 1981.]

BOARD OF EDUCATION OF SAN LUIS OBISPO COUNTY et al., Plaintiffs, Cross-defendants and Respondents, v. COUNTY OF SAN LUIS OBISPO et al., Defendants, Cross-complainants and Appellants.

COUNSEL

James B. Lindholm, Jr., County Counsel, and Thomas P. Conroy, Deputy County Counsel, for Defendants, Cross-complainants and Appellants.

Richard C. Anthony, Frank J. Fekete, Peter C. Carton, Ronald D. Wenkart and Joanne A. Velman for Plaintiffs, Cross-defendants and Respondents.

OPINION

ANDREEN, J.—The County of San Luis Obispo (County) appeals from a judgment granting declaratory and injunctive relief which, inter alia, required it to provide or fund housing to the Board of Education and Superintendent of Schools of San Luis Obispo County (collectively Board). We affirm.

For some years prior to 1965, the County provided the Board with office space for the superintendent of schools (Superintendent) located at 2156 Sierra Way, in San Luis Obispo. In February of 1965, the County adopted resolution No. 76-65 transferring to the Board many of its duties and functions.[1] This was done pursuant to enabling legislation. (Ed. Code, §§ (671)/1080 and (20400)/1620 et seq.[2])

---

[1]There is no dispute that this resolution was made pursuant to an agreement with the Board.

[2]All statutory references are to the Education Code unless otherwise specified. The Education Code of 1959 was reorganized without substantive change, at least as it applies to this case, in 1977. Both the 1959 code section numbers and the reorganized code section numbers will be cited; the former will be enclosed in parentheses followed by the corresponding section of the 1977 code.

The resolution provided that the Board would thenceforth prepare an estimated yearly budget and submit it to the County. The County divested itself of the power to approve this budget. Instead, the County would levy a tax to raise sufficient revenue to cover it. This revenue would be paid into a fund separate from the county general fund, called the County School Service Fund. (§ (20400)/1620.)

The resolution further provided in section 14: "14. *The expenses of the County Superintendent of Schools,* the County Board of Education, and the County Committee on School District Organization *required* by Education Code section 881 or any other sections or laws of the State of California *to be paid from the County General Fund shall not be paid from such fund but shall be paid from the money in the County School Service Fund* which is derived from the tax levied as provided above." (Italics added.)

Section 16 of the same resolution then provided: "16. *Notwithstanding previous sections to the contrary, the County Board of Supervisors* shall continue to provide services of the various departments of county government including but not limited to: legal service of the District Attorney, the County Treasurer, the County Auditor, the County Assessor, the County Clerk; and *shall continue to provide housing,* utilities, custodial service, and the like, and including all services *which have heretofore been provided."* (Italics added.)

In June of the same year, 1965, the County passed resolution No. 265-65. This resolution recited that Education Code section (20402.1)/ 1624 required that expenses of the Superintendent listed in section (881)/1510 be paid from the county school service fund and not from the county general fund. One of the expenses listed in section (881)/ 1510 (which referenced § (754)/1203) was that of providing housing for the Superintendent. Since section 16 of the February resolution, No. 76-65, had provided that *the County* would continue to provide housing, this section was amended to delete that provision.[3] Section 17 of the February resolution also was amended by the insertion of the following provisions:

---

[3]Section 16 was amended to read: "16. Notwithstanding previous sections to the contrary, the County Board of Supervisors shall continue to provide services of the various departments of county government including but not limited to: legal service of the District Attorney, the County Treasurer, the County Auditor, the County Assessor, the County Clerk."

"17 . . . . . . . . . . . . . .

"(b) The following shall apply effective July 1, 1965 concerning the building at 2156 Sierra Way, San Luis Obispo, California in which the County Superintendent of Schools Office is located:

"(1) Said building shall remain the property of the County of San Luis Obispo.

"(2) The County Superintendent of Schools shall pay $1.00 per year rent to the County of San Luis Obispo at the beginning of each year for the use of the portion of said building which the County Superintendent of Schools is now using.

"(3) The County of San Luis Obispo shall provide all janitorial services and all utilities for the portion of said building used by the County Superintendent of Schools; the County of San Luis Obispo shall regularly bill the County Superintendent of Schools therefor on the basis of a formula satisfactory to both parties; and the County Superintendent of Schools shall pay to the County of San Luis Obispo the amount of each said bill within 30 days after the receipt thereof.

". . . . . . . . . . . . . .

"(7) If the County Superintendent of Schools requires additional space for its needs, the County Superintendent of Schools shall provide said additional space at its own sole cost and expense."

Thirteen years later, in June 1978, the state electorate passed Proposition 13, adding article XIII A to the Constitution, which limited the ad valorem tax on real property.

Because the County was leasing office space in the open market for its use, the County's director of facility services recommended that the County charge the Board for the space it was using. At the meeting during which the proposal was discussed, the following minute order was issued: "Matter of rental fees for County Superintendent of Schools office space on Sierra Way is presented. Said matter discussed and thereafter, on motion . . . the lease to be renewed only until June 30, 1979, and to be terminated thereafter."

Thereafter, on August 28, 1978, the County adopted resolution No. 78-484. This resolution amended section 17(b)(2) of the June 1965 resolution, No. 265-65, to raise the Superintendent's rent to $8,000 a month commencing on September 15, 1978. The filing of this lawsuit was the result of the last resolution.

After a hearing, the trial court issued its judgment which provided that the County still was obligated by resolution No. 265-65 and section (671)/1080 to provide housing to the Superintendent, that the minute order of July 24, 1978, implemented the rental agreement of June 1965 (resolution No. 265-65) and set the rent at $1 per year until June 30, 1979, and that resolution No. 78-848, setting the rent at $8,000 a month, was invalid. If the County did not continue to furnish and pay for office space for the Superintendent, the County was ordered to transfer the necessary funds to the Superintendent so that he could rent space elsewhere. In addition, the County was allowed to discharge its responsibility by transferring sufficient funds to the Superintendent to provide for housing pursuant to the Revenue and Taxation Code. The County was enjoined from evicting the Superintendent or charging the increased rent prior to June 30, 1979, and from attempting to enforce in any way the provisions of resolution No. 78-484. The Board was awarded costs.

As stated above, by resolution No. 76-65, the County transferred certain duties and functions to the Board and set up a single-budget county school service fund. However, the County reserved to itself the duty of providing the expenses of housing and custodial services for the Superintendent. Section (671)/1080 expressly provides for permissive transfer to the board of the duty to budget for office space for the superintendent of schools but leaves to the two entities the flexibility to determine whether the money should be paid by the county general fund or the single-budget fund. The section provides in part: "The county board of supervisors, by resolution, may transfer all of the following duties and functions of the county board of supervisors to the county board of education:

"(a) Approval of the county superintendent's estimate of anticipated revenue and expenditures pursuant to Section 1042 following which it shall be filed with the county board of supervisors.

"(b) Allowance of the actual and necessary travel expenses, the expenses of the office of the county superintendent of schools, and the

expenses of providing housing for all the services of the county superintendent of schools pursuant to Sections 1200, 1201, 1202, and 1203.

". . . . . . . . . . . . . .

"The transfer of duties and functions under the provisions of this article shall not alter the requirement that the expenses for such duties and functions be paid out of the county general fund as provided elsewhere in this code, provided however that the county board of supervisors and the county board of education may *agree* that *all or any portion* of the expenses for such duties and functions which are by law required or permitted to be paid from the county general fund shall be included in that part of the single budget prepared by the county board of education for which a county tax is levied pursuant to Section 1623." (Italics added.)

A similar provision may be found in the last paragraph of section (881)/1510 which provides: "The provisions of this section shall not be construed to prohibit support from the county general fund from being provided for duties and services performed pursuant to sections enumerated above for those counties operating under the provisions of Section 1080."

■ A careful reading of section (671)/1080, along with section (881)/1510 establishes that transfer of funding obligation requires the mutual consent of the board and the county, and that the entities may agree for the transfer of some but not all of the costs of running the school system.

The very fact that only a portion of the expenses may be transferred under these sections indicates that the single budget does not have to cover all of the expenses associated with the board. Those functions retained by the county are the obligation of the county general fund.

Thus in *Visnich v. County of Sacramento* (1979) 93 Cal.App.3d 626 [155 Cal.Rptr. 860] the court said: "Little if any mention of section 1080 has been made in case law since its enactment in 1963 (Stats. 1963, ch. 1921, § 1, pp. 3945-3946); legislative history does not, however, suggest that it was intended to compel county supervisors to surrender entire and exclusive control over the duties and functions therein enumerated. Section 1080 was an outgrowth of recommendations made in 1963 by the Senate Factfinding Committee on Education. Chapter 4

of the committee's report, dealing with problems related to the office of the county superintendent of schools, suggested that time, effort and money could be saved if more freedom were afforded to county school officials in their management of school operations. (Sen. Factfinding Com. Rep. on Education, ch. 4, p. 35, Appen. to Sen. J. (1963 Reg. Sess.).) The report recommended, inter alia, that the county board of education assume 'all *educational* functions now performed by boards of supervisors, . . .' (Italics added.) Pursuant to this recommendation, section 1080 was enacted, obviously to allow a transfer by county supervisors of various functions of an *educational* nature so as to afford a *limited* degree of fiscal and managerial freedom to county school authorities in dealing with matters within their own cognizance. (See 48 Ops.Cal.Atty.Gen. 64, 67 (1966).)" (At p. 635.)

We turn to an analysis of section (20402.1)/1624. In 1965 it provided that: "[A]ny expenses of the county superintendent of schools . . . required by Section 881 [1510] . . . to be paid from the county general fund shall not be paid from such fund but shall be paid from the money in the county school service fund . . . ."

It is argued by the County that this mandates that the expenses for the Superintendent's office space be paid from the county school service fund. However, the section only related to "the *expenses* of the . . . Superintendent . . ." (italics added). The office space was not such an "expense" unless the parties agreed to the transfer of the expense obligation.

The trial court below held that the function of providing housing to the Superintendent was retained by the County pursuant to resolution No. 265-65 adopted June 21, 1965. We turn to an analysis of that resolution.

As noted earlier, believing that a transfer of the housing function was required by section (20402.1)/1624, the Board deleted the earlier provision which provided that it would provide housing and thenceforth began charging the Superintendent $1 per year rent. The parties, however, ignored this provision and the rent was not paid.

There is no evidence that the Board did anything after the second resolution was adopted that was different from what it was doing prior to that time. The evidence is that it did not pay the "rent"; there is no

evidence that it paid for any janitorial services. All the Superintendent did was stay in the building that he had been in for years.

The Board alleged in its complaint, and the court found, that the County leased the subject office space to the Board for $1 per year. The County takes the position that this constituted a transfer of functions under sections (671)/1080 and (881)/1510, and that the housing function became the responsibility of the Board.

This argument overlooks reality. The rent charged—$1 per year—had no relation to the fair market value of the building. In actual fact, the County continued to reserve for itself the function of providing office space for the Superintendent's use. If the "rent" charged had approached the fair market value of the use of the office space, then as the cost of office space increased in the area, the County could have raised the Board's rent. A normal landlord-tenant relationship would have existed, with the transfer of the housing function to the Board under section (671)/1080.

The above analysis makes it unnecessary to discuss the July 24, 1978, minute order and the resolution No. 78-484. ■ For unless other arrangements were made, as long as it needed the premises and it wished to occupy them, the Board had the right to do so and unilateral actions by the County could not affect that right.

Although the County has the obligation to provide office space to the Superintendent, it does not follow that the Superintendent has the right to use the office space on Sierra Way contrary to the County's wishes. The trial court found that the Board was entitled to retain possession of the Sierra Way premises until June 30, 1979. Afterward, the County could discharge its obligation to provide office space by transfer of funds to provide same. Unless such a transfer has been made, however, no charge for the use of the space after the above date may be imposed.

We were informed by both parties at the oral hearing that the Board has constructed its own building for the use of the Superintendent.[4] The Board invited us to order the County to pay for the new building, providing that it is not excessive to the Superintendent's needs and the cost was reasonably incurred.

[4]The parties' motions to augment the record are denied.

■ We affirm the trial court's order that the County is legally obligated to provide office space, but we decline to remand with directions to the trial court to direct the County to pay for the new building. There is nothing before us to indicate whether the building was constructed with the consultation and consent of the County, nor is there any evidence of need. If the parties wish that issue resolved by the judicial process, it will be necessary to institute a new action and introduce evidence before a trial court. Also, we are unwilling to attempt to define the legal issues for such a proceeding and nothing said in this paragraph is an attempt to define the issue.

We were told that the Superintendent has not relinquished control over his old space. We note that the judgment below requires the County to "furnish and pay for office space *needed* by" the Board (italics added). To the extent that such space is not now needed, the Board should relinquish same.

The parties agree that section 9 of the judgment, which requires a transfer of funds from the County to the Board pursuant to sections 2307 and 2309 of the Revenue and Taxation Code, if the parties agree that the Board will provide the housing function, is erroneous insofar as its reference to the code is concerned. We modify the judgment to read on page 4, line 14, "by concurrently transferring to the Plaintiffs annually such sums as are required to fund housing for Plaintiffs."

In all other respects, the judgment is affirmed.

Franson, Acting P. J., and Stone, J.,* concurred.

A petition for a rehearing was denied December 23, 1981, and appellants' petition for a hearing by the Supreme Court was denied January 27, 1982.

---

*Assigned by the Chairperson of the Judicial Council.