[No. C023840. Third Dist. Feb. 6, 1997.]

RIO LINDA UNIFIED SCHOOL DISTRICT, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
LUIS DIAZ, JR., et al., Real Parties in Interest.

## COUNSEL

Edson & Laplante, Domenic D. Spinelli and Kristin L. Comer for Petitioner.

No appearance for Respondent.

Kimberly A. Henderson, David S. Henderson and Kyle R. Knapp for Real Parties in Interest.

## OPINION

DAVIS, J.—Real parties in interest Luis Diaz, Jr., and his mother, Maria Diaz (for convenience, we shall refer only to Luis Diaz as real party), brought this personal injury action against petitioner Rio Linda Unified School District (School). The School moved for summary judgment/summary adjudication of issues. (Code Civ. Proc., § 437c; undesignated section references will be to this code.) The trial court denied the motion. The School then petitioned this court for a writ of mandate directing the trial court to vacate its order and enter a new one granting the School's motion. We issued an alternative writ and a stay of proceedings pending our plenary review of the issues presented.

We conclude a moving party's reference to inadmissible evidence in its statement of undisputed facts does not waive a contemporaneously raised objection to that evidence in the accompanying points and authorities. We shall thus dissolve the stay and grant the requested relief.

### STANDARD OF REVIEW

The historic paradigm for our de novo review of a motion for summary judgment remains unchanged. We first identify the issues framed by the pleadings since it is these allegations to which the motion must respond. We then determine if the moving party has established a prima facie entitlement to judgment in its behalf. Only if the moving party has

satisfied this burden do we consider whether the opposing party has produced evidence demonstrating there is a triable issue of fact with respect to any aspect of the moving party's prima facie case. (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].)

 Recently, however, the Legislature has given a "federal" flavor to the nature of the moving party's prima facie case. Previously, the moving party could establish its prima facie entitlement to judgment only by demonstrating the *existence* of facts which negated an element of the opponent's case. (*AARTS Productions, Inc.* v. *Crocker National Bank, supra*, 179 Cal.App.3d at p. 1064.) Now, however, the moving party is not limited to supporting its motion with affirmative evidence. It may also establish its prima facie entitlement to judgment by demonstrating its opponent's discovery responses are devoid of evidence to support an element of the opponent's case. (*Leslie G.* v. *Perry & Associates* (1996) 43 Cal.App.4th 472, 482 [50 Cal.Rptr.2d 785]; *Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573, 590 [37 Cal.Rptr.2d 653].)[1]

## THE PLEADINGS

In his first "cause of action,"[2] real party alleged the School maintained "a dangerous, unsafe[,] and hazardous condition in that students were directed to play in a manner allowing [them] to fall from playground equipment and come into contact with concrete placed in close proximity to the playground equipment . . . ." This implicates the elements of a public entity's liability for an injury caused by a dangerous condition of its property. (Gov. Code, §§ 830, 835.) In the second count, he alleged the School "was negligent and careless in that it failed to provide adequate or any supervision over the aforesaid school activity and area" despite at least constructive knowledge of the manner in which students played "and that accidents were likely to occur[] in the absence of adequate supervision . . . ." This implicates the elements of negligent supervision. (*Hoyem* v. *Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, 513 [150 Cal.Rptr. 1, 585 P.2d 851]; *Leger* v. *Stockton Unified School Dist.* (1988) 202 Cal.App.3d 1448, 1459-1460 [249

---

[1]The Sixth District has held that the moving party must also produce evidence that the opponent *cannot* reasonably expect to produce evidence supporting the infirm element. (*Addy* v. *Bliss & Glennon* (1996) 44 Cal.App.4th 205, 214 [51 Cal.Rptr.2d 642].) Because the infirmity in the present cause of action of real party is irremedial, we need not reach whether or not *Addy* is correct.

[2]More properly characterized, real party had but one cause of action for personal injury, which he stated in alternative *counts* that alleged different theories of liability. (*Barrett* v. *Superior Court* (1990) 222 Cal.App.3d 1176, 1181-1182 [272 Cal.Rptr. 304].)

Cal.Rptr. 688].) In each instance, real party alleged he sustained severe injuries when he fell from a slide onto the concrete on June 7, 1994.[3]

## DEFENDANT'S MOTION

The School's motion asserted the discovery responses of real party demonstrated he could not establish the existence of an element of either count and thus it was entitled to judgment. (§ 437c, subd. (o)(2).) Specifically, the School argued there was no evidence whatsoever that real party in fact fell from a slide on school property. Relying on this defect, it argued real party could not establish even the existence of a dangerous condition on its property (let alone that the dangerous condition was a cause in fact and a proximate cause of injury) for his first count (Gov. Code, §§ 830, 835), nor demonstrate that negligent supervision was the proximate cause of the injury for his second count. (*Woodsmall* v. *Mt. Diablo etc. Sch. Dist.* (1961) 188 Cal.App.2d 262, 264 [10 Cal.Rptr. 447].) To this end, it submitted deposition excerpts and interrogatory responses containing the following facts.

Bob Bastian taught a special education class for 12 severely handicapped students at the School. Real party was one of his pupils. Born in 1986, real party is developmentally disabled and has very minimal vocal skills either in English or Spanish.[4]

Bob Bastian and Melissa Conn-Smith (a resource specialist without classroom) were supervising the last outdoor recess of June 7, 1994, on the playground. Among other equipment, the playground had a taller slide (depicted in the School's exhibit 1 to the parents' deposition) and a pair of smaller ones attached to platforms (pictured in exhibit 2 to the depositions). The two slide areas were surrounded by "tanbark" contained by a low concrete retaining wall. There were at least 180 ordinary students in first through third grades at recess in addition to the 12 special-education students. Bob Bastian last noticed real party playing tag with the ordinary students (as principles of "mainstreaming" encouraged). Real party was not near any of the playground equipment. Bastian then directed his attentions elsewhere for an undetermined period.

Melissa Conn-Smith kept the playground under continuous surveillance. It would take her a couple of minutes to make a complete 360-degree scan. She noticed a group of children playing tag about eight steps away, but could not

---

[3]These were the factual bases of liability alleged by real party in the claim he filed with the School (Gov. Code, § 945.2), which delimit the scope of the subsequent complaint (*Fall River Joint Unified School Dist.* v. *Superior Court* (1988) 206 Cal.App.3d 431, 434 [253 Cal.Rptr. 587]).

[4]The litigants stipulated real party was not competent to testify as a witness.

recall at her deposition whether real party was among them. When she returned her gaze to where she had last seen the children playing tag, she noticed real party sitting on the ground at least 50 feet from any of the playground equipment, pointing at his leg and making whining sounds. None of the children near real party mentioned to her how he had been injured. She summoned Bob Bastian.

Bob Bastian concurred in his deposition that real party was not sitting near any of the slides when Bastian came over to him. Real party did not identify what had happened to him; some of the children told Bastian that real party had fallen while running. Bastian asked if he could walk; real party nodded and limped back to the classroom. He iced the child's knee, then called Maria Diaz. He told her about the injury, suggested she take real party to a doctor, and recommended that real party not take a school bus home. She said she was unable to come to the school, so Bastian drove real party home. Melissa Conn-Smith overheard him on the phone recommending that a doctor examine the child.

Maria Diaz claimed *she* had overruled a recommendation by the School that her son was not badly hurt and could take the bus home; *she* offered to come for him. She admitted, however, that it was Bob Bastian who brought her son home. When he got home, all her son could communicate was "hurt" and "pain" while pointing at his leg. Because (she claimed) the teachers had said it was not a significant injury and she did not see anything seriously amiss, she delayed taking her son to the doctor. She took him to the hospital after he continued limping for a few days. At the hospital, she repeated what she had heard, that real party had injured himself while running.

The orthopedic specialist to whom the hospital referred her found a femoral fracture. He performed surgery to insert two screws. At his deposition, he said the injury had appeared to be consistent with the cause reported by Maria Diaz. He removed the cast in July, at which point the fracture was healing. However, real party broke his femur falling down the stairs in October. Another doctor with whom the Diazes consulted agreed the fracture would not have been the result of a major trauma, noting real party suffered from osteoporosis.

Real party's parents testified that at some unspecified point during vacation while their son was still in his cast and required a wheelchair, they took him to the playground to see if they could determine how he had been injured. They wheeled him around from location to location, asking if he had fallen. According to Maria Diaz, her son pointed at the taller slide and said the Spanish word for "there." The father's testimony was less clear, at first

indicating his son pointed at the taller slide, but then selecting the photograph of the smaller slides as the location identified by his son.

On the occasions when she supervised the playground, Melissa Conn-Smith had never seen real party play on any of the slides; instead, he wandered around or would roll a ball to another student. Bob Bastian also never saw him willingly use the slides; during the monthly safety program on use of playground equipment, real party appeared apprehensive of heights.

In their interrogatory responses, the Diazes admitted they were not presently aware of any witnesses to the accident. They did not list any videotapes among the materials in their possession relevant to the accident.

In its statement of undisputed facts, the School specifically cited the testimony of Maria Diaz regarding her visit to the playground with her son. The School also cited the testimony of her husband regarding their son's identification of the location of his fall. Terming this evidence inadmissible hearsay, citing the inability of real party to testify, and relying on the admission by the Diazes that there were no other witnesses to the accident, the School argued real party lacked any evidence he fell from a slide and thus could not prove his case.

### Real Party's Opposition

In terms of new evidentiary materials, real party included only additional excerpts from the depositions included by the School. Where pertinent, we have incorporated them above. Essentially, the opposition focused on the parents' account of the purported identification by their son of the location of his accident, asserting his gesture and his utterance were admissible as spontaneous statements. Real party also objected on grounds of hearsay to Bob Bastian's recount of the description by the other children of the nature of the accident.

In supplementary opposition, Maria Diaz claimed she had recently discovered they *had* made a videotape on the occasion of their trip to the playground with their son. "We videotaped his answers *after* he *initially* told us that this was where he fell." (Italics added.) The School objected to the introduction of this recently discovered evidence.

### The Trial Court's Ruling

At the hearing on the motion, the trial court agreed the gesture by real party and his utterance "there" were not spontaneous statements within the

meaning of the exception to the hearsay rule. However, the court indicated it felt it was entitled to consider these facts in ruling on the motion *regardless* of the School's description of them as inadmissible hearsay in the points and authorities because the School had included them in the statement of undisputed facts.

In its order denying the motion, the trial court stated, "The hearsay objection of [Real Party] to [Bob Bastian]'s statement as to what the children stated is SUSTAINED. The motion for summary judgment is DENIED. The video tape is not properly before the Court, and is ignored for purposes of this ruling. There is evidence from which the inference can be drawn that [Real Party] was injured on the subject slide, which evidence is referred to in moving party's own submission of the testimony of the mother as to the son's response when asked where he was injured. The father's [conflicting] testimony in that respect simply created a factual issue. Moving party contends that [Real Party has] failed to come forward with evidence of negligent supervision or dangerous condition. Reference to moving party's separate statement makes clear that moving party has not come forward with evidence as to these matter[s] [sufficient to shift] the burden to [Real Party]." (Paragraphing and internal quotation marks deleted.)

## ANALYSIS

 Real party does not dispute the propriety of the legal analysis by the School. Instead, he disputes the School's factual predicate. He asserts, "In [the School]'s own Statement of Undisputed Facts, they [*sic*] specifically admit evidence showing where the Real Party in Interest fell from the slide. That is, the testimony of MARIA DIAZ that when asked where he injured himself, their son pointed to a playground slide and uttered '[there]' . . . . Together with this admission and the consequential lack of proof by [the School] that Real Party in Interest cannot prove an element of one of his [counts], the [trial court] properly denied [the School]'s motion. . . . [The writ] being sought is based on the inaccurate premise that there was no evidence to identify the location or character of the [dangerous property]. There was admissible evidence to show . . . [the dangerous property was] the slide. It was the testimony admitted to in [the School]'s own Statement of Undisputed Facts."

 Under the new method for establishing a prima facie entitlement to judgment, the moving party must demonstrate a negative, i.e., that there *is no* evidence to support an element of the opponent's case. This is akin to the burden of an appellant in proving there is no substantial evidence in support of a judgment. "It is incumbent upon an appellant who claims evidentiary

insufficiency to set forth the evidence supporting the judgment and indicate wherein it is insufficient." (*Visnich* v. *County of Sacramento* (1979) 93 Cal.App.3d 626, 632 [155 Cal.Rptr. 860].) ▮ If a party contends some particular issue of fact has no support in the record, it must set forth *all* the material evidence on the point and not merely the evidence favorable to it. (*Foreman & Clark Corp.* v. *Fallon* (1971) 3 Cal.3d 875, 881 [92 Cal.Rptr. 162, 479 P.2d 362].) Thus, the School was *required* to include the portions of the depositions wherein the parents recounted the purported identification by real party of the cause of his injury. To have omitted these facts would have put the School at risk of the accusation of an attempt to mislead the trial court as to the state of the discovery record.

According to the trial court, "[Y]ou start with the pleadings. Having looked at the pleadings, you know what the issues are that the . . . parties have to address. [¶] You then look at the statement of undisputed facts, and if looking at the statement of undisputed facts you conclude that the moving party is not entitled to a judgment as a matter of law, you don't even have to look any further than that." While this paradigm may be true in a general sense (and may reflect the necessities of an overloaded law-and-motion department), there is no authority for the proposition that the mere reference in a statement of undisputed facts to the *existence* of inadmissible discovery responses waives any contemporaneous objection by the moving party in its supporting argument to the *admissibility* of these responses. After all, the document is a statement of what is *undisputed*, and in the present case it *is* undisputed that among other responses to discovery Maria Diaz and her husband both recounted facts in their depositions regarding their son's reactions at the playground. That does not mean the School considered this admissible evidence. Rather, the School argued in its accompanying points and authorities (and continues to argue) that this evidence cannot be used to prove how the accident occurred because it is inadmissible hearsay, and since real party had no other evidence (nor could obtain any) he could not establish his case. Real party never asserted in his trial court opposition that the School had waived its objection to this evidence; he argued only that the evidence was—contrary to the School's view—admissible. We find no factual basis for imposing the doctrine of waiver under these circumstances.

Real party relies on *Hurley Construction Co.* v. *State Farm Fire & Casualty Co.* (1992) 10 Cal.App.4th 533 [12 Cal.Rptr.2d 629] in support of the trial court's ruling. On appeal, Hurley had argued the defendant's summary judgment motion was supported by a declaration which was inadmissible and without foundation. The court held, "Hurley admitted each of the facts listed in State Farm's separate statement of undisputed facts. In doing so, he waived any objection to the exhibits, discovery responses, and

deposition testimony which formed the evidentiary basis of State Farm's separate statement." (*Id.* at p. 541.) The case is not remotely apposite factually. The *express* admission that a fact is true necessarily includes the admission the evidence on which it is based is admissible; presumably, an opponent would not admit to that which cannot be proven by the moving party. Here, by contrast, the School admitted nothing. It included an undisputed fact which was part of the record in the case and expressly explained separately[5] why the fact could not be used to support real party's complaint because it was inadmissible.

Thus disregarding the inadmissible hearsay to which the School objected, there is no evidence real party fell from a slide on the School's playground. Real party, as we have noted, did not dispute the School's legal argument that this defect would be fatal to his case. (Cf. *Leslie G. v. Perry & Associates, supra,* 43 Cal.App.4th at pp. 483-484 [cannot establish causation by speculation alone].) We therefore shall direct the trial court to grant the School's motion.

## DISPOSITION

Let a peremptory writ of mandate issue directing the respondent court to vacate its order and to enter a new order granting the School's motion. The stay previously issued shall dissolve on the date this opinion is final. The School shall recover its costs.

Sparks, Acting P. J., and Scotland, J., concurred.

---

[5]In light of the realities of practice, it might be wise for counsel who must incorporate evidence in their statement of undisputed facts which they consider inadmissible to note that explicitly on the face of the statement as well, e.g., "At her deposition, Party recounted the inadmissible hearsay statement of Declarant regarding [contested element of opponent's case]."