Filed 12/11/13  Castleview Home Loans v. Home Loan Center CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CASTLEVIEW HOME LOANS, INC., et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> HOME LOAN CENTER, INC., <br><br> Defendant and Respondent. | G047043 <br><br> (Super. Ct. No. 06CC00250) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kim Garlin Dunning, Judge.  Affirmed.

Law Office of Mark Mazda and Mark Mazda, for Plaintiffs and Appellants.

Sheppard, Mullin, Richter & Hampton, Sean P. O'Connor, Karin Dougan Vogel and Aaron J. Malo, for Defendant and Respondent.

## INTRODUCTION

This case is a sequel to one we decided in 2011, *Lauren v. LendingTree, LLC*.  In *Lauren*, a group of consumer borrowers attempted to certify a class in an action against LendingTree, alleging they had been deceived about LendingTree's method of doing business.  LendingTree had allegedly advertised it would search an extensive network of competing lenders for the best loan terms, when actually it had referred some of the borrowers to only one lender, its subsidiary Home Loan Center, Inc.  The trial court denied the motion to certify the class, and we affirmed the trial court's decision. (*Lauren v. LendingTree, LLC* (July 29, 2011, G042932) [nonpub. opn.] (*Lauren*))

In the present case, lenders in the LendingTree network have stepped up to the plate – or one of them has.  This lawsuit is against Home Loan Center, the subsidiary lender LendingTree acquired in December 2004.  LendingTree itself is not a party.  One of the other network lenders sued Home Loan Center for interference with contractual relations and with prospective economic advantage, asserting Home Loan Center had hogged all the good loan prospects through a special deal with LendingTree.

This case is somewhat unusual in that a class has been certified, but there is no class representative.  Appellant Castleview Home Loans, Inc., was originally a class representative; it was later demoted to ordinary plaintiff.  Before a new class representative could be named, the trial court granted defendants' summary judgment motions.[1]  Castleview appeals from the judgment entered after granting the motions.

We affirm the judgment.  Castleview did not present evidence to create a triable issue of fact as to either contract interference or interference with prospective economic advantage.  Castleview presented no evidence of any effort on Home Loan Center's part to cause LendingTree to breach its contracts with other lenders, even

---

[1]     The complaint also named Anthony Hsieh, who owned Home Loan Center before LendingTree acquired it, as a defendant.  The trial court granted his motion for summary judgment, and Castleview has not identified any issue with respect to the judgment in Hsieh's favor on appeal.

assuming that a breach occurred. Nor has Castleview presented any evidence of a prospective economic relationship disrupted by Home Loan Center. The court properly granted Home Loan Center's motion for summary judgment.[2]

## FACTS

LendingTree advertises itself as a kind of personal shopper for mortgage loans. It represents it has developed a network of banks and lenders, all competing against each other and ready to fund consumer loans. Because of this competition, the customer "wins," that is, gets the best of the loan terms on offer.

A LendingTree customer prepares an online application, giving personal and financial information and stating the kind of loan desired. LendingTree then matches the information to the criteria set up by the network banks, such as borrower credit scores, amount of loan, yearly income. If there is a match, LendingTree passes the top four bids along to the customer.

According to Castleview, the LendingTree system functioned in this way until December 2004. After December 2004, the system operated differently. Instead of parceling out potential leads to all the banks in the network, LendingTree sent the "lucrative and promising leads" to Home Loan Center, a former network lender LendingTree had acquired in December 2004.[3] Although these potential borrowers still received four bids, ostensibly from competing banks, Home Loan Center allegedly fabricated three of the bids, making its bid the best one. The borrowers were not informed that no outside bank had competed for their business.

Two network lenders, The Mortgage Store, Inc., and Castleview, filed a class action suit in November 2006 on behalf of themselves and the network lenders against Home Loan Center. The causes of action were interference with contractual

---

[2] Castleview has also appealed from the order removing it as class representative. Because we affirm the judgment, it is unnecessary to reach this issue.

[3] Castleview submitted evidence that 10 to 20 percent of the leads went to Home Loan Center exclusively after LendingTree acquired it in December 2004.

3

relations and with prospective economic advantage and violations of California's Unfair Competition Law (UCL) and False Advertising Law (FAL) (Bus. & Prof. Code, §§ 17200 et seq. and 17500 et seq.).[4]  The court certified the class in April 2010.  The Mortgage Store dissolved in March 2008 and could no longer conduct business in its home state.  It was dismissed as both a plaintiff and as a class representative in July 2010. The case then proceeded with Castleview as the sole class representative.  In July 2011, the trial court removed Castleview.

Home Loan Center moved for summary judgment in April 2011, just before the expiration of the five-year deadline to get a case to trial.  The trial court granted summary judgment on both causes of action and dismissed the case.

## DISCUSSION

We review a trial court's decision to grant summary judgment de novo. (*Reliance Nat. Indemnity Co. v. General Star Indemnity Co.* (1999) 72 Cal.App.4th 1063, 1074.)  Code of Civil Procedure section 437c, subdivision (a), permits a party to move for summary judgment on the ground the action has no merit.  A defendant moving for summary judgment has met its burden of showing a cause of action has no merit if it has shown that one or more elements of the cause of action cannot be established.  (*Id.* § 437c, subd. (p)(2).)  Once the moving defendant has met that burden, the burden shifts to the plaintiff to show that a triable issue of material fact exists.  (*Ibid.*)

"[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries the burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . .  A burden of production entails only the presentation of 'evidence.' (Evid. Code, § 110.)  . . . A prima facie

---

[4]     The UCL and FAL claims reiterated the allegations of the interference claims and therefore rose or fell depending on the fate of the latter claims.

4

showing is one that is sufficient to support the position of the party in question."
(*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850-851.)

## I.	Interference with Contractual Relations

The elements of a cause of action for interference with contractual relations are "'(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.' [Citation.]" (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 55.) Our independent review establishes that Castleview failed to raise a triable issue of fact as to the third element of this cause of action.

Nowhere in the documents Castleview submitted in opposition to the motion is there any evidence of some action taken by Home Loan Center to induce LendingTree to do anything with respect to other lenders in the network. Most of the evidence Castleview submitted had to do with the borrowers' claims that they were defrauded by LendingTree's advertisements and by Home Loan Center's sales tactics. The only evidence regarding LendingTree's practices in distributing leads came from a LendingTree representative, who stated that it alone determined how leads would be distributed and from a Home Loan Center vice-president, who testified that LendingTree was solely responsible for determining which leads went to which lenders, consistent with the individual lender's "filters."[5] The LendingTree representative also testified that the special deal between it and Home Loan Center was the product of arm's length negotiations, not any threats, inducements or deceptions by Home Loan Center.

---

[5] Each lender informed LendingTree of its initial criteria for acceptable borrowers, e.g., minimum credit score, annual income, and so on. LendingTree then compared these filters with the information from the online applications so that a customer was not referred to a lender that would not even consider making a loan to that person.

Castleview provided no evidence that would create a triable issue of fact as to any intentional act by Home Loan Center designed to disrupt a contractual relationship with other lenders. (See *Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 238; *Augustine v. Trucco* (1954) 124 Cal.App.2d 229, 246; cf. *Little v. Amber Hotel Co.* ( 2011) 202 Cal.App.4th 280, 288-289 [defendant's misrepresentations and under-the-table payment disrupted attorney-client contract]; *Woods v. Fox Broadcasting Sub., Inc.* (2005) 129 Cal.App.4th 344, 356 [defendant's actions to lower value of stock options could support interference cause of action]; *Campbell v. Veith* (1953) 121 Cal.App.2d 729, 732 [landlord threatened to evict tenant unless tenant evicted subtenant]; *Remillard-Dandini Co. v. Dandini* (1941) 46 Cal.App.2d 678, 679-680 [defendant allegedly persuaded plaintiff's creditors to breach contracts with plaintiff].) The plaintiff must show that the contract "was breached and abandoned by reason of the defendant's wrongful act and that such act was the moving cause thereof." (*Dryden v. Tri-Valley Growers* (1977) 65 Cal.App.3d 990, 997.) Castleview presented no evidence to create a triable issue of fact that Home Loan Center engaged in any such act.

## II.     Interference with Prospective Economic Advantage

The elements of a cause of action for interference with prospective economic advantage are "'"(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." [Citations.]'" (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1153 (*Korea Supply*).) In addition, the plaintiff must prove that the defendant's interference was "wrongful 'by some measure beyond the fact of the interference itself.' [Citation.]" (*Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 393, fn. omitted (*Della Penna*).)

6

Castleview failed to present evidence that it had the required economic relationship with some third party. It cannot state a cause of action for interference with prospective economic advantage with respect to LendingTree because it had a contract with LendingTree. Castleview's economic relationship with LendingTree was contractual, not prospective.

Castleview argues that it can state a cause of action against Home Loan Center for interference with prospective economic advantage with respect to LendingTree, even though it had a contract with LendingTree, citing *Korea Supply*. We do not believe *Korea Supply* supports this position. *Korea Supply* was a pleading case, and our Supreme Court stated, "[A] plaintiff who believes that he or she has a contract but who recognizes that a trier of fact might conclude otherwise might bring claims for both torts so that in the event of a finding of no contract, the plaintiff might prevail on a claim for interference with prospective economic advantage." (*Korea Supply*, at p. 1158.) The court clearly regarded the claim for interference with prospective economic advantage as an alternate remedy for pleading purposes, and a fallback one at that. A contractual relationship, however, differs significantly from a mere expectation of economic benefit. (See *Della Penna*, *supra*, 11 Cal.4th at p. 392.) There is no dispute in this case that Castleview had a contract with LendingTree.

Even if Castleview could maintain a claim for interference with prospective economic advantage with respect to LendingTree, notwithstanding the contract, Castleview presented no evidence of the "act that is wrongful apart from the interference itself" (*Korea Supply*, *supra*, 29 Cal.4th at p. 1154) required to complete this tort. "[A]n act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law or other determinable legal standard." (*Id.* at pp. 1158-1159, fn. omitted.)

Castleview has offered no evidence of any unlawful act by Home Loan Center that interfered with Castleview's relations with LendingTree. Whether Home

7

Loan Center misled the customers LendingTree sent to it has no bearing on actions designed to disrupt Castleview's relationship with LendingTree. And Castleview offered no other evidence of any act by Home Loan Center.[6]

Castleview also proffered the leads sent to Home Loan Center instead of it as providing the necessary relationships, but these were obviously far too speculative to qualify, especially in light of Castleview's verified denial in response to a request for admission that it had funded *any* loans from LendingTree leads between 2004 and 2007. "[A] plaintiff that wishes to state a cause of action for [interference with prospective economic advantage] must allege the existence of an economic relationship with some third party that contains the probability of future economic benefit to the plaintiff. This tort therefore 'protects the expectation that the relationship eventually will yield the desired benefit, not necessarily the more speculative expectation that a potentially beneficial relationship will arise.' [Citation.]" (*Korea Supply*, *supra*, 29 Cal.4th at p. 1164.) At best, Castleview could only speculate that *if* it had received more leads from LendingTree, a potentially beneficial relationship with a borrower *might* have arisen. This is insufficient. The trial court properly granted summary judgment to Home Loan Center.

## III.    Evidentiary Issues

When it moved to certify the class in this case, Castleview asked the trial court to take judicial notice of declarations submitted in *Lauren* as part of its evidence supporting certification. A different judge heard the class certification motion and ruled on the request for judicial notice as well as on other evidentiary issues when he granted

---

[6]     Castleview cites *Korea Supply* for the proposition that the independently wrongful act need not be directed at it. (See *Korea Supply, supra*, 29 Cal.4th at p. 1163.) While this is true, the independently wrongful acts need to be designed to disrupt the relationship between the plaintiff and the party from whom it expects the advantage. Home Loan Center's alleged deception of the borrowers could have no effect on Castleview's relationship with LendingTree.

the motion.[7]  Castleview then asked the judge hearing the summary judgment motion to consider these declarations as evidence in opposition to summary judgment.

Home Loan Center objected to the recycling of this evidence on the ground that granting a request for judicial notice established only the existence of the documents, not the truth of any matter stated therein.  In considering the motion for summary judgment, the court took judicial notice of the existence of these documents, but not of the truth of any statements they contained.  On appeal, Castleview challenges the trial judge's decision.

We need not resolve this issue.  Even if the contents of the *Lauren* declarations had been admitted, they would have provided nothing to fill the holes in Castleview's evidence.  The disputed declarations were from borrowers and former Home Loan Center employees.  None of the borrowers could have testified from personal knowledge about any actions Home Loan Center took to induce LendingTree to breach its contracts with other network lenders or to interfere with Castleview's prospective economic advantage.  None of the former employees testified as to this issue.[8]  The most that could be gleaned from the latter evidence was that Home Loan Center had a special relationship with LendingTree after it became LendingTree's subsidiary.  This evidence, however, proves nothing about the actions Home Loan Center allegedly took to influence its parent's conduct with respect to other lenders.

The trial court also sustained objections to four new declarations Castleview submitted in opposition to the summary judgment motions, rulings Castleview has also challenged on appeal.  We review rulings on evidentiary objections for abuse of discretion.  (*Miranda v. Bomel Construction Co., Inc.* (2010) 187

---

[7]  The judge who heard the *Lauren* motion for class certification made detailed rulings on LendingTree's objections to evidence presented by the plaintiffs in that motion.

[8]  Only one of the former employee declarants was employed by Home Loan Center before the acquisition took place, and this employee testified only that Home Loan Center won the competition among six lenders to be LendingTree's subsidiary.

Cal.App.4th 1326, 1335.) It is not enough for Castleview to show error; it must also show prejudice. (Evid. Code, § 353, subd. (b).) That is, it must show that if the evidence had been admitted, the outcome would have been more favorable. (*Brokopp v. Ford Motor Co.* (1977) 71 Cal.App.3d 841, 853.) [9]

As to the declarations of Mazda (plaintiff's attorney), Kleckner (plaintiff's expert), and Jackson, the outcome would have been no different. None of these declarants testified as to any action taken by Home Loan Center to induce LendingTree to alter its relationships with other lenders in the network or as to any fact that would have made a relationship between Castleview and a potential LendingTree borrower any less speculative.[10] The remaining declaration, by a former Home Loan Center employee, again established only that Home Loan Center knew it was going to have a special relationship with LendingTree whereby it would get exclusive leads. The declarant testified as to no facts regarding Home Loan Center's efforts to bring this special relationship about.

The trial court properly granted summary judgment to Home Loan Center and dismissed the case as to this defendant. As Castleview did not present any argument with respect to the other defendant's motion for summary judgment in its opening brief,

---

[9]  Castleview exhibits some confusion regarding the court's role in evaluating the evidence submitted to support and oppose motions for summary judgment. Although a court must liberally construe the evidence of the party opposing summary judgment and resolve doubts in that party's favor, the court does not relax the rules of evidence in order to do so. Code of Civil Procedure section 437c, subdivision (d), requires supporting and opposing declarations to set forth *admissible* evidence and to show that the declarant is competent to testify. The court does not resolve doubts as to the *admissibility* of evidence in the opponent's favor, as Castleview contends. It applies the rules of evidence evenhandedly and resolves *inferences to be drawn from the evidence* in favor of the opposing party. (See § 437c, subd. (c); see also *Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 510-511 [unsupported expert opinion of no evidentiary value]; *Rio Lindo Unified School Dist. v. Superior Court* (1997) 52 Cal.App.4th 732, 738-739 [hearsay statements inadmissible; summary judgment granted].)

[10]  In the portion of the expert's declaration to which the court sustained Home Loan Center's objection for lack of foundation, the expert opined that the network lenders were likely to have closed the loans sent to Home Loan Center if these borrowers had been sent to the network. He expressed no opinion, however, as to whether Castleview could have closed any of these loans. The trial court properly sustained Home Loan Center's objection to this opinion. (See *Bushling v. Fremont Medical Center, supra,* 117 Cal.App.4th at pp. 510-511 [unsupported expert opinion of no evidentiary value].)

10

we may treat any appeal from that portion of the case as abandoned.  (See *Behr v. Redmond* (2011) 193 Cal.App.4th 517, 537-538.)

## DISPOSITION

The judgment is affirmed.  Respondent is to recover its costs on appeal.


BEDSWORTH, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


MOORE, J.

11