[No. A076930. First Dist., Div. Two. Jan. 11, 1999.]

ROBERT SCHEIDING et al., Plaintiffs and Appellants, v.
DINWIDDIE CONSTRUCTION COMPANY, Defendant and Respondent.

COUNSEL

Brayton, Harley & Curtis, Philip A. Harley, James L. Oberman and Gordon R. Levinson for Plaintiffs and Appellants.

Ropers, Majeski, Kohn & Bentley, John Curran Ladd, Mary Ellen Gambino and Kathleen A. Clark for Defendant and Respondent.

OPINION

**LAMBDEN, J.**—In this case we gauge the evidence that must be "shown" to support a summary judgment motion in order to require the party opposing the motion to take up the burden of producing countervailing evidence.

Plaintiffs Robert and Rae Scheiding filed this action for damages following Robert's diagnosis with asbestosis and asbestos-related pleural disease. Plaintiffs appeal from summary judgment granted in favor of defendant Dinwiddie Construction Company (Dinwiddie) after the trial court failed to discern any triable issue of fact relating to the element of causation. Dinwiddie's motion was supported by a declaration of counsel stating that Robert's responses to discovery did not mention Dinwiddie. The motion contended that the plaintiffs had no evidence to suggest Dinwiddie's presence at work sites where Robert's asbestos exposure allegedly occurred. We reverse the judgment.

## BACKGROUND

Plaintiffs filed their complaint on October 18, 1994, naming hundreds of defendants and alleging injury from Robert's asbestos exposure during work as a laborer and electrician. Dinwiddie was among the specified "Premises Owner/Contractor Liability Defendants" allegedly liable on three counts for causing the release of asbestos fibers at various work sites during Robert's career.

Dinwiddie answered and attended the deposition of Robert, which took place over a period of five days in mid-October 1995. Plaintiffs' verified responses to standard interrogatories named 45 employers and hundreds of jobsites where, from 1948 through 1990, Robert might have been exposed to asbestos.

Dinwiddie's motion for summary judgment (Code Civ. Proc., § 437c; all further unspecified statutory references are to the Code of Civil Procedure) argued lack of causation. It offered as undisputed material facts Robert's interrogatory responses identifying numerous employers and jobsites, and Robert's failure to identify in his deposition any jobsite where Dinwiddie was the general contractor. As support for the latter point, Dinwiddie referred to a five-volume deposition transcript, but without attaching it. Essentially, Dinwiddie's motion was based on the declaration of defense counsel stating that Robert failed to ever mention Dinwiddie in the course of discovery. It is undisputed that during the deposition neither Dinwiddie, nor any other defendant, ever asked Robert to identify any jobsite where Dinwiddie had been present. In fact, Dinwiddie asked no questions at the deposition and conducted no other discovery.

Plaintiffs opposed the motion by claiming Dinwiddie had not carried the statutory burden of "showing" that the element of causation could not be established. They did not dispute Dinwiddie's statement of undisputed facts

except for this qualification on the lack of testimony identifying Dinwiddie: "Objection. Hearsay. Undisputed to the extent [Robert] did not say [Dinwiddie] was the general contractor at a particular jobsite. However, [Robert] was never asked whether [Dinwiddie] was the general contractor at any site or whether [he] recalled working near [Dinwiddie] employees."

Plaintiffs' counsel, Jacqueline M. Kramer, declared in opposition that: "I have reviewed the indexes of all five volumes of [Robert's] deposition transcriptions. Defendant is correct in that [he] did not discuss [Dinwiddie], however, . . . [Robert] was never once asked whether [Dinwiddie] was the general contractor at any of his jobsites. In fact, the sole instance in which the name [Dinwiddie ] appears in the transcript is in the defendants' statement of appearances." Ms. Kramer also stated plaintiffs had received no discovery propounded by Dinwiddie. Plaintiffs offered no declarations or other affirmative evidence suggesting that Dinwiddie was at any of the jobsites. Plaintiffs referred only to their own interrogatory responses, which contained no such evidence.

After issuing a tentative ruling to grant the motion, the court inquired why the plaintiffs had not submitted any declaration saying they could identify Dinwiddie. Counsel—this time Gregory Sheffer—explained his office had decided against it: "Because had we done that, it would have encouraged Defendants to come and do the same thing. Simply do no discovery, do nothing else, and just say the Plaintiffs don't have any evidence. We are not going to do any work. They have to prepare an opposition." Subdivision (o)(2) of section 437c, he maintained, had not been satisfied because "no discovery specific to this issue was conducted" and Dinwiddie had not made an "affirmative" showing.

Dinwiddie relied on the amended summary judgment statute as it has been construed in several cases holding that a defendant can meet the burden of proof by showing, through use of discovery responses, that a plaintiff has no evidence to support the case. Plaintiffs relied on other cases which have required more than a mere statement that there is an absence of evidence. The court, having warned plaintiffs' counsel their "high road" strategy was "very risky," took the matter under submission and ultimately adhered to its tentative ruling against the plaintiffs.

On appeal, plaintiffs reiterate their arguments from below, contending that reliance on Robert's deposition was not enough under the summary judgment statute to "show" there was no triable issue of fact. Plaintiffs contend that without the deposition having particularly addressed Dinwiddie's presence or absence from the jobsites, the initial burden could not have been met.

## Discussion

### *Standard of Review*

A motion for summary judgment must be granted if all of the papers submitted show "there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law. In determining whether the papers show . . . there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, . . . and all inferences reasonably deducible from the evidence . . . ." (§ 437c, subd. (c).) ■ A defendant has met its burden of showing a cause of action has no merit if it "has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show . . . a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff . . . may not rely upon the mere allegations or denials of its pleading to show . . . a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ." (*Id.,* subd. (o)(2); *Parsons* v. *Crown Disposal Co.* (1997) 15 Cal.4th 456, 464 & fn. 4 [63 Cal.Rptr.2d 291, 936 P.2d 70].) The trial court's summary judgment rulings are subject to de novo review. (*580 Folsom Associates* v. *Prometheus Development Co.* (1990) 223 Cal.App.3d 1, 14 [272 Cal.Rptr. 227].)

### *Attaching the deposition transcript was unnecessary*

■ We initially dispatch plaintiffs' feeble grievance that Dinwiddie did not attach to its motion either the entire deposition transcript or "relevant excerpts" therefrom. Dinwiddie's statement of undisputed facts stated that the transcript did not identify anyone from Dinwiddie, and plaintiffs' response admitted the point. We do not see what would have been accomplished by asking the trial court to review five volumes of transcript— approximately one thousand pages according to Dinwiddie—only to prove a *conceded negative proposition.* Given the undisputed lack of any identification of Dinwiddie, it is also hard to imagine what "relevant excerpts" might have been provided in lieu of the full transcript. This cannot be regarded as error; it did not impact the substantial rights of the parties; and it did not impair the trial court's ability to rule on the motion. We therefore disregard it. (§ 475.)

### *Shifting the burden under the amended statute*

■ Dinwiddie's motion stated that plaintiffs had not revealed, in their responses to discovery propounded by other parties, any evidence to suggest

that Dinwiddie was present at any of the jobsites where the alleged asbestos exposure occurred. This was undisputed, and Dinwiddie claims it sufficient under subdivision (o)(2) of section 437c to have ". . . *shown* that one or more elements of the cause of action . . . cannot be established . . . ." (Italics added.) However, the statute also provides that the burden of producing evidence of a triable issue of fact *does not* shift to the opposing party until such a showing is made. Plaintiffs argue that Dinwiddie's motion was essentially based on no evidence. Accordingly, plaintiffs submitted essentially no evidence in opposition, even after the trial court's warning that it was "risky" to do so. We are therefore confronted by a record that arguably discloses no affirmative evidence in support of the motion and no affirmative evidence in opposition. The issue thus presented is one of law: what quantum of evidence is needed to trigger the evidentiary burden shifting which has become fundamental to summary judgment procedure in California?

We begin by observing that the nature of summary judgment in California has changed dramatically over the last 10 years. The shifting of the burden of producing evidence that lies at the heart of this appeal could not have occurred under the summary judgment law as it previously existed. Formerly, a moving defendant had to affirmatively negate a cause of action and could not attempt to rely on a plaintiff's vague or otherwise insufficient responses to discovery. Prior to the amendments of section 437c, the burden of proof rested entirely on the moving party to establish a right to summary judgment by demonstrating the negative proposition that the opposing party could not prevail. (See *Molko* v. *Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107 [252 Cal.Rptr. 122, 762 P.2d 46]; *Vesely* v. *Sager* (1971) 5 Cal.3d 153, 169 [95 Cal.Rptr. 623, 486 P.2d 151].) In most cases, this was a burden impossible to bear.

Older decisions frequently referred to summary judgment as a "drastic remedy" and emphasized the right to jury trial on constitutional grounds, noting that both the federal and state Constitutions establish trial by jury as a basic right. (U.S. Const., 7th Amend.; Cal. Const. art. I, § 7.) Nevertheless, California and federal courts long ago agreed that nothing in the summary judgment procedure is inherently unconstitutional. (*Bank of America, etc.,* v. *Oil Well S. Co.* (1936) 12 Cal.App.2d 265, 270 [55 P.2d 885]; *Fidelity & Deposit Co.* v. *United States* (1902) 187 U.S. 315 [23 S.Ct. 120, 47 L.Ed. 194].) The California and federal courts also both equated the general evidentiary burden on summary judgment with the burden on a motion for a directed verdict, at least where the moving party also had the burden of proof at trial. "[T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must

direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." (*Anderson* v. *Liberty Lobby, Inc.* (1986) 477 U.S. 242, 250 [106 S.Ct. 2505, 2511, 91 L.Ed.2d 202].)

Where the federal and California laws diverged was in the allocation of the burden of producing evidence, at the motion stage, regarding issues where the nonmoving party would have the burden at trial. Historically, it was not enough in California for the moving party to show that the opposing party lacked evidence on a given point; the moving party was required to produce facts to affirmatively disprove or negate the point. (*Barnes* v. *Blue Haven Pools* (1969) 1 Cal.App.3d 123 [81 Cal.Rptr. 444].) In California the burden remained with the moving party even where that party would have had the benefit of a presumption at trial, and even if it required the moving party to undertake the difficult, and often impossible, task of proving or disproving a negative proposition. (*Pena* v. *W. H. Douthitt Steel & Supply Co.* (1986) 179 Cal.App.3d 924 [225 Cal.Rptr. 76].)

Under the corresponding view of the federal law, a moving party has been permitted to simply assert the absence of evidence to support a claim in order to shift the burden to the opposing party. In contrast, California's original summary judgment law placed no burden whatsoever on the opposing party. The federal approach, which places a burden of producing evidence upon the opposing party (usually the plaintiff) which would traditionally have arisen only at trial, has been most often described by reference to the holding of the United States Supreme Court in *Celotex Corp.* v. *Catrett* (1986) 477 U.S. 317 [106 S.Ct. 2548, 91 L.Ed.2d 265] (*Celotex*) (but also see *Anderson* v. *Liberty Lobby, Inc., supra,* 477 U.S. 242; and *Matsushita Elec. Industrial Co.* v. *Zenith Radio* (1986) 475 U.S. 574 [106 S.Ct. 1348, 89 L.Ed.2d 538]). Whether California should adopt this approach has prompted considerable debate.

The 1992 and 1993 amendments to California's summary judgment statute (effective January 1, 1993 and January 1, 1994, respectively) included a procedural change which appeared to track the federal law. The amendments did not change the fundamental requirement that the moving party prove its right to summary judgment, but did adopt the federal mechanism of burden shifting. The new statute expressly provided that the burden does not shift to a responding party until the moving party (in this context, as usual, a defendant or cross-defendant) has been able to "show" that a cause of action has no merit "because an element of the claim cannot be established or there is a complete defense." Thus, the amended language of section 437c, like its counterpart Federal Rules of Civil Procedure, rule 56 (28 U.S.C.), now places the initial burden on the moving party, and shifts it to the opposing

party upon a "showing" that one or more elements of the cause of action cannot be established. (*Villa* v. *McFerren* (1995) 35 Cal.App.4th 733, 743 [41 Cal.Rptr.2d 719].) The question thereafter became whether the "showing" described in the new California statute also mirrored the definition utilized under the federal law.

Prior to the 1992 and 1993 amendments, the court in *Biljac Associates* v. *First Interstate Bank* (1990) 218 Cal.App.3d 1410, 1421 [267 Cal.Rptr. 819], had decided that the federal allocation of the burden on the motion did not apply under California law: " 'There is nothing in the statute which lessens the burden of the moving party simply because at the trial the resisting party would have the burden of proof on the issue on which the summary judgment is sought to be predicated. In such a case, on the motion for summary judgment, the moving party must generally negative the matters which the resisting party would have to prove at the trial. [Citations.]' " *Biljac* relied on the line of authorities commencing with the conclusion in *Barnes* v. *Blue Haven Pools, supra,* 1 Cal.App.3d 123, 127, that " '[t]he placement of the burden of proof at trial does not affect the showing required for a summary judgment' " in California. (*Biljac Associates* v. *First Interstate Bank, supra,* at p. 1421.)

The amendments prompted argument over the extent to which the amendments were influenced by the *Celotex* rationale. There was initial debate as to whether the new statutory requirement of a showing that an element " 'cannot be established' " changed the older rule requiring the defendant to " 'conclusively negate' " the element. (*Hagen* v. *Hickenbottom* (1995) 41 Cal.App.4th 168, 184 [48 Cal.Rptr.2d 197] (*Hagen*).) (See also Hatchimonji, *Considering the Summary View of the Recent Change in Summary Judgment Law* (Mar. 1994) CTLA Forum 11, 13; and Schmalz, *Summary Judgment: A Dress Rehearsal for Trial* (Sept. 1993) 16 L.A.Law. 23.) Those who supported the view that the amendments substantially lessened the moving party's burden pointed to the amended statute's similarity to the United States Supreme Court's statement in *Celotex* that, under the federal summary judgment rule, where the nonmoving party would have the burden at trial of proving the element at issue, "the burden on the moving party may be discharged by *'showing'—that is, pointing out to the district court*—that there is an absence of evidence to support the nonmoving party's case." (477 U.S. at p. 325 [106 S.Ct. at p. 2554], italics added; cf., e.g., Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1998) ¶ 10:243, p. 10-86.) Others pointed to the murky legislative history of the amendments and questioned whether the Legislature had deliberately softened California's long-standing hostility to summary judgment. (See, e.g., Dowling, *Is There Any Hope for the Celotex Rule on Summary Judgment*

*Motions in California*? (1992) 26 U.S.F. L.Rev. 493, 503.) The argument has not abated even after the publication of several opinions by the Courts of Appeal.

### *Union Bank v. Superior Court relied upon discovery responses*

Most of the debate has centered on the legislative history of the amendments, which was remarkably obscure considering the magnitude of the potential change in the culture of California litigation. An exhaustive review of the legislative history of the statute prefaced the holding of the first published opinion to take up the question. In the case of *Union Bank* v. *Superior Court* (1995) 31 Cal.App.4th 573 [37 Cal.Rptr.2d 653] (*Union Bank*), Presiding Justice Turner concluded that "[t]he fact that the Legislature chose not to utilize the term 'negate' reflects an intention to change the long-standing duty of a moving defendant." (*Id.* at pp. 586-587, fn. 8.) However, the court in *Union Bank* also expressly declined to decide whether the Legislature had "intended to adopt the *Celotex* . . . test" (*ibid.*) and limited its opinion to an assessment of the effect of the amendments on the rule of *Barnes* v. *Blue Haven Pools, supra,* 1 Cal.App.3d 123, in order to reject the former case's holding that a moving defendant cannot secure summary judgment merely by relying on a plaintiff's discovery responses which reveal an absence of evidence of liability or damage. (*Union Bank, supra,* 31 Cal.App.4th at p. 589.) The effect of the holding of *Union Bank* was to allow the moving defendant to base its motion entirely on the plaintiffs' discovery responses.

In *Union Bank* the plaintiffs' theory of recovery was that the bank had "participated in" a fraud on the plaintiffs involving repossession of personal property which the plaintiffs' limited partnership had leased and in which the bank claimed a security interest. Union Bank propounded requests for admissions by the plaintiffs that Union Bank (1) " 'took no inappropriate action in connection with its role in the transactions . . .' " (31 Cal.App.4th at pp. 578-579); (2) had committed no fraud or deceit on the plaintiffs; and (3) had participated in no fraudulent conspiracy. Union Bank combined these requests with form interrogatories which required that, for any response which was not an unqualified admission, the plaintiffs should " 'state all facts upon which you base your response . . . .' " (*Id.* at p. 578.)

The plaintiffs admitted the first statement (that the bank took no inappropriate action) but refused to make the other admissions that the bank had not engaged in fraud. In response to the " 'state all facts' " interrogatories which accompanied the requests for admissions, the plaintiffs stated, with respect to the second and third requests, only that they " 'believe that Union Bank

knowingly and fraudulently took the assignment of all the assets of [the limited partnership] to secure the loan' " and that they " 'reserve the right to further respond to this interrogatory.' " (*Union Bank, supra,* 31 Cal.App.4th at p. 578.) Union Bank made these discovery responses the basis for its motion for summary judgment. The issue was thus whether this was sufficient evidence, under the 1992 and 1993 amendments, to shift the burden to the plaintiffs in the summary judgment proceedings.

In its analysis of the amendments, the court in *Union Bank* described the *Celotex* test as follows: "In *Celotex,* after permitting a plaintiff time to utilize the discovery provisions of federal law, the defendant moved for summary judgment. The evidence relied upon by the defendant consisted of the plaintiff's interrogatory answers. Those answers indicated that the plaintiff had no evidence linking the defendant's allegedly defective product with the decedent. The United States Supreme Court held that the reliance on the interrogatory answers was sufficient to shift the burden of proof to the plaintiff to produce evidence of such exposure to the defective product. . . ." (*Union Bank, supra,* 31 Cal.App.4th at p. 585, fn. 7.)

The *Union Bank* opinion also quoted the language of the United States Supreme Court's *Celotex* opinion: " 'In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of a nonmoving party's case necessarily renders all other facts immaterial. . . . [¶] Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. But . . . we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim. On the contrary, Rule 56(c), which refers to "the affidavits, *if any*" (italics added), suggests the absence of such a requirement.' [Citation.]" (*Union Bank, supra,* 31 Cal.App.4th at pp. 585-586, fn. 7, quoting *Celotex, supra,* 477 U.S. at pp. 322-323 [106 S.Ct. at pp. 2552-2553], first ellipses in *Union Bank.*)[1]

The reason for the reluctance of the *Union Bank* court to embrace the federal approach to summary judgment is not stated in the opinion. In a

[1]There is opportunity for confusion inherent in the vocabulary of the discussion. Justice Reinquist's opinion just quoted refers to the failure of *the party opposing the motion* to have

footnote, the opinion cautions that it "expressly [did] not reach the issue in this case as to whether the Legislature in 1992 intended to adopt the *Celotex Corp.* test . . . ." (31 Cal.App.4th at pp. 586-587, fn. 8.) However, a close reading of the statute suggests at least one reason for the court to have stopped short of concluding that the Legislature intended to adopt the *Celotex* rule: California's section 437c, unlike Federal Rules of Civil Procedure, rule 56 (28 U.S.C.), does not permit the court to enter summary judgment on its own motion.

Professor Charles Wright has discussed this aspect of the *Celotex* holding as follows: " 'Justice Rehnquist . . . suggested that the power of the court to enter summary judgment sua sponte supports the conclusion that the moving party . . . need not produce evidence, but simply can argue that there is an absence of evidence by which the nonmovant can prove his case.' (10A Wright, Federal Practice & Procedure (1994 supp.) § 2720, p. 10.)" This distinction was noted by the court in the *Union Bank* case (31 Cal.App.4th at p. 586, fn. 7) and suggests, without expressly describing, where a line distinguishing section 437c from the federal rule might be drawn.

Unlike the federal rule described by Professor Wright, which he says provides that the moving party " 'need not produce evidence, but simply can *argue* that there is an absence of evidence' " (*Union Bank, supra*, 31 Cal.App.4th at p. 586, fn. 7, quoting 10A Wright, Federal Practice & Procedure (1994 supp.) § 2720, p. 10, italics added), California's procedure requires the moving party to support its motion with evidence in the relatively elaborate form of separate statements. The court is neither permitted to act sua sponte nor solely upon the basis of argument: "In determining whether the papers show . . . there is no triable issue as to any material fact the court *shall consider all of the evidence set forth in the papers, . . . and all inferences reasonably deducible from the evidence* . . . ." (§ 437c, subd. (c), italics added.) Section 437c also provides that "the plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show . . . a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ." (*Id.*, subd. (o)(2).) The statute itself thus implies the corresponding need for concrete evidence from the moving party and expressly requires the moving party to supply more than the bare assertion, whether alleged in a pleading or by way

made a " 'showing' " sufficient to defeat the motion. The context points out that the moving party " 'always bears the initial responsibility of *informing* the . . . court' " of the circumstances which " 'demonstrate the absence of a genuine issue of material fact.' " (*Union Bank, supra*, 31 Cal.App.4th at p. 585, fn. 7, italics added.) In other words, the moving party must *inform* the court of the circumstances that *demonstrate* that the opposing party cannot make a *showing*. The California statute refers to the "showing" required as to both the moving and opposing parties.

of argument, that the opposing party has no evidence to support a particular claim.

As we have just noted, the court in *Union Bank* declined to describe the extent to which the Legislature in its amendments may have adopted (or even understood) the *Celotex* test. How, then, was the *Union Bank* opinion able to characterize the plaintiffs' "interrogatory answers, *which contained no facts* supporting the existence of misrepresentations or a fraudulent conspiracy," as the affirmative evidence required by the statute to shift the burden of proof in connection with the summary judgment? (*Union Bank, supra,* 31 Cal.App.4th at p. 581, italics added.) We conclude it could do so by inferring from the plaintiffs' discovery answers that there was no further evidence available to oppose the motion.

### The inferences available from the Discovery Act

California's Civil Discovery Act of 1986 imposed upon the plaintiffs in *Union Bank* a duty to answer interrogatories in a straightforward fashion, and as completely as possible, given the information available to them. Section 2030, subdivision (f)(1) requires interrogatory answers to meet the following standard: "Each answer in the response shall be as complete and straightforward as the information reasonably available to the responding party permits. If an interrogatory cannot be answered completely, it shall be answered to the extent possible. . . ." Based upon the logic of undisputable public policy, the duty to truthfully and fully respond has been described as follows, "Parties must 'state the truth, the whole truth, and nothing but the truth in answering written interrogatories' [citation]." (*Guzman* v. *General Motors Corp.* (1984) 154 Cal.App.3d 438, 442 [201 Cal.Rptr. 246], citing *Deyo* v. *Kilbourne* (1978) 84 Cal.App.3d 771, 783 [149 Cal.Rptr. 499].)

The court in the *Union Bank* case could therefore presume that the plaintiffs had answered "fully and truthfully," and could infer that they had no other evidence to support their claims. The plaintiffs did not ask for a continuance to obtain further evidence, which is mandatory under section 437c, subdivision (h); there was no issue regarding the changing of an answer as contemplated by section 2025, subdivision (q)(1); and there was no attempt to serve any supplemental response as permitted by section 2030, subdivision (m). Accordingly, it was reasonable for the court in *Union Bank* to conclude as follows: ". . . plaintiffs' interrogatory responses indicate they have no evidence defendant was a member of a fraudulent conspiracy; and plaintiffs admitted defendant had done nothing wrong in connection with the actual lending of the money and repossession of the scanner. This was sufficient to shift the burden of proof to plaintiffs pursuant to section 437c, subdivision (o)(2)." (*Union Bank, supra,* 31 Cal.App.4th at p. 593.)

Moreover, without any intervening amendment or correction which might have been permitted by statute, the *Union Bank* plaintiffs could not have created an issue of fact simply by contradicting the answers they gave in their responses to discovery. The Supreme Court has not retreated from its holding 25 years ago in *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1 [112 Cal.Rptr. 786, 520 P.2d 10] (*D'Amico*), which recognized that "admissions against interest have a very high credibility value. This is especially true when, as in this case, the admission is obtained not in the normal course of human activities and affairs but in the context of an established pretrial procedure whose purpose is to elicit facts. Accordingly, when such an admission becomes relevant to the determination, on motion for summary judgment, of whether or not there exist triable issues of fact (as opposed to legal issues) between the parties, it is entitled to and should receive a kind of deference not normally accorded evidentiary allegations in affidavits." (11 Cal.3d at p. 22, italics omitted.) The Supreme Court has consistently refused to allow a triable issue of fact to be conjured by the submission of an affidavit contradicting the declarant's prior deposition testimony.[2] (See also *King* v. *Andersen* (1966) 242 Cal.App.2d 606 [51 Cal.Rptr. 561] [the rule providing for liberal construction of affidavits was held not to require reversal of a summary judgment for defendants where the plaintiff in an assault case stated in his counteraffidavit that unnecessary force was used, but had previously stated in his deposition that no force was used]; and *Newport* v. *City of Los Angeles* (1960) 184 Cal.App.2d 229 [7 Cal.Rptr. 497] [affirming summary judgment, the court held the affidavit was sufficient because it incorporated the verified admissions of the opposing party].)

*Price* v. *Wells Fargo Bank* (1989) 213 Cal.App.3d 465, 482 [261 Cal.Rptr. 735] (*Price*) was among the first of several cases to have pointed out that the holding of *D'Amico* should be viewed "with caution" and referred skeptically to *Leasman* v. *Beech Aircraft Corp.* (1975) 48 Cal.App.3d 376 [121 Cal.Rptr. 768], which stated: " 'Accordingly, when a defendant can establish his defense with the plaintiff's admissions . . . the credibility of the admissions are valued so highly that the controverting affidavits may be disregarded as irrelevant, inadmissible or evasive.' (See also *Niederer* v. *Ferreira* (1987) 189 Cal.App.3d 1485,1503 [234 Cal.Rptr. 779]; *Shapero* v. *Fliegel* (1987) 191 Cal.App.3d 842, 849 [236 Cal.Rptr. 696].)" The *Price* court concluded that: ". . . an uncritical application of the *D'Amico* decision can

---

[2] We suggest no conclusion as to the appropriate treatment, upon the hearing of a summary judgment motion, of a contradictory supplemental answer served pursuant to section 2030, subdivision (m), which states: "Without leave of court, a party may serve an amended answer to any interrogatory that contains information subsequently discovered, inadvertently omitted, or mistakenly stated in the initial interrogatory. . . ." (See 2 Cal. Civil Discovery Practice (Cont.Ed.Bar 1998) Interrogatories, § 7.91, p. 632.)

lead to anomalous results, inconsistent with the general principles of summary judgment law" (and quoted the startled exclamation of commentators Weil and Brown: " 'Note that if the case went to trial, the judge or jury might choose to believe the contradictory testimony. But for summary judgment purposes, a party is bound by his or her admissions made in the course of discovery!' (Weil & Brown, Cal. Practice Guide: Civil Procedure before Trial (1988) ¶ 10:84.)" (*Price, supra,* 213 Cal.App.3d at p. 482, italics omitted.)

The court in *Price* refused to conclude ". . . that admissions should be shielded from careful examination in light of the entire record" and held that "[a] summary judgment should not be based on tacit admissions or fragmentary and equivocal concessions. . . ." (*Price, supra,* 213 Cal.App.3d at p. 482.) We view this record with equal caution.

### Hunter v. Pacific Mechanical inferred a lack of evidence from discovery responses

In *Union Bank* the plaintiffs responded to discovery in two ways: by making an admission damaging to their case and also by stating their "belief" that evidence supporting their claims would be later revealed. Later decisions have concluded that the later category of "empty" discovery responses can be enough by itself to support summary judgment. Chief among these decisions is the opinion of our own Division Five in *Hunter* v. *Pacific Mechanical Corp.* (1995) 37 Cal.App.4th 1282 [44 Cal.Rptr.2d 335] (*Hunter*), which held ". . . it was enough to show through factually vague discovery responses that Hunter lacked any significant probative evidence on the critical element of causation. In other words, [the defendant] could effectively show that the element of causation 'cannot be established' by pointing to an *absence of evidence* to support this element." (*Id.* at p. 1288, citing § 437c, subd. (o)(2), italics in original.) Later cases from around the state agreeing with this view include: *Certain Underwriters at Lloyd's of London* v. *Superior Court* (1997) 56 Cal.App.4th 952 [65 Cal.Rptr.2d 821]; *Rio Linda Unified School Dist.* v. *Superior Court* (1997) 52 Cal.App.4th 732 [60 Cal.Rptr.2d 710]; *Lopez* v. *Superior Court* (1996) 45 Cal.App.4th 705 [52 Cal.Rptr.2d 821]; *Leslie G.* v. *Perry & Associates* (1996) 43 Cal.App.4th 472 [50 Cal.Rptr.2d 785]; *Brantley* v. *Pisaro* (1996) 42 Cal.App.4th 1591 [50 Cal.Rptr.2d 431].

Division Five noted the refusal of the Supreme Court to grant review of *Union Bank* and characterized its holding as "moving toward the federal direction. . . ." (*Hunter, supra,* 37 Cal.App.4th at p. 1287.) The court summarized the federal law as follows: "In *Celotex,* the Supreme Court

recognized that the moving party always bears the initial burden of establishing the absence of a genuine issue of material fact. . . . However, if the nonmoving party bears the burden of proof on an issue at trial, the moving party *need not support its summary judgment motion with evidence negating an essential element of the nonmoving party's case* to satisfy its burden. . . . The moving party may simply point to the *absence of evidence* to support the nonmoving party's case. . . . The nonmoving party must then 'set forth specific facts showing that there is a genuine issue for trial.' . . ." (*Hunter, supra,* 37 Cal.App.4th at p. 1286, citations omitted.) The court referred to this ability to point out the "absence of proof" as the "new relaxed California standard." (*Id.* at p. 1289.) Just as the court in *Union Bank* had done, *Hunter* found the evidence to support summary judgment in the opposing party's responses to discovery.

*Hunter* upheld summary judgment granted in an asbestos case on the issue of causation because the plaintiff's deposition responses failed to tie the defendant to any jobsite where alleged asbestos exposure occurred. *Hunter* held: "In order to sustain its burden as the moving party on summary judgment, [defendant] was not required to come forward with evidence of its own to affirmatively demonstrate that [plaintiff] could not have been exposed to asbestos as a result of [its] activities. Rather, it was enough to show through factually vague discovery responses that [plaintiff] lacked any significant probative evidence on the critical element of causation. In other words, [defendant] could effectively show that the element of causation 'cannot be established' by pointing to an *absence of evidence* to support this element. (§ 437c, subd. (o)(2).) Once [defendant] met its burden, the burden would then shift to [plaintiff] to come forward with evidence necessary to prove a triable issue of material fact existed with regard to the element of causation." (*Hunter, supra,* 37 Cal.App.4th at p. 1288.) The inference drawn by the court in *Hunter* is an extension of the one which supported the court's conclusion in the *Union Bank* case: since the plaintiff had a statutory duty to respond fully, his "factually devoid" answers showed he had no facts. (*Id.* at p. 1287.)

In the *Union Bank* case, the plaintiff made an admission that he had no evidence as to one issue and stated his "belief" as to another; this was enough to shift the burden on the motion. In the *Hunter* case there was no such admission and the "absence" of evidence was shown by plaintiff's deposition testimony that he "could not recall" ever working in the same area with employees of the defendant. The court observed that discovery had been available and inferred there must be no other evidence to assist the plaintiff: "Hunter's reply failed to provide any evidence as to regularity or nature of contact with PMC's asbestos-related activities. Since the entire

record indicates only that PMC employees might have been present in Hunter's workplace during different time frames, it offers only speculation and conjecture. After being given ample time to conduct discovery, Hunter has provided no evidence with respect to the time, location and actual circumstances of his exposure to PMC's asbestos-related activities." (*Hunter, supra,* 37 Cal.App.4th at pp. 1289-1290.)

By thus referring to the availability of discovery, the holding of *Hunter* itself suggests that the outcome in that case might have been different if discovery had been thwarted or incomplete. It follows that the inference which has permitted courts to view "factually devoid responses" as the evidence required to support summary judgment may be unavailable in other fact situations. The facts distinguish our case from *Hunter.* ■ Here, the defendant's motion turned upon the declaration of defense counsel that "[p]laintiff did not testify that he worked at any jobsite at which Dinwiddie was the general contractor." In opposition, the declaration of plaintiffs's counsel asserted that all of the questions at plaintiffs' lengthy deposition had been asked by parties other than Dinwiddie and that no party had ever asked plaintiff whether Dinwiddie had been general contractor at any of the jobsites. In this context, Robert's answers were not "factually devoid" in the sense used by the court in *Hunter* for the simple reason that because plaintiff was never asked about Dinwiddie, it would be unreasonable to infer that he had no other information linking Dinwiddie to his illness. In fact, plaintiffs argued that Dinwiddie had not shown evidence "to preclude the Scheidings from establishing, through evidence and/or witnesses other than Mr. Scheiding, that Dinwiddie was indeed responsible for their injuries."

Accordingly, we distinguish the *Hunter* case because it involved deposition testimony where the plaintiff was *specifically asked* about the defendant and said he "could not recall" ever working in the same area with the defendant's employees. (*Hunter, supra,* 37 Cal.App.4th at p. 1285.) Here, Dinwiddie conducted no discovery. In his deposition plaintiff was not asked a single question concerning Dinwiddie. Therefore even if the duty to fully answer was owed by plaintiff to other parties, there is nothing in this record to suggest his answers were complete as to Dinwiddie. To put it another way, the duty to answer completely only extended so far as the reasonable ambit of the questions which were asked. The plaintiff had no duty to volunteer information that was not requested. The distinction is material because without the premise of such a duty, neither the moving party nor the trial court here could rely on the inference of completeness which was fundamental to the holdings of both *Union Bank* and *Hunter.*

Those opinions spoke of a defendant no longer needing to affirmatively negate an element of the plaintiff's case and both relied on the intendments

of the Civil Discovery Act of 1986 to infer an absence of evidence. But neither case held that a moving party can simply argue or allege that the opposing party has no evidence. To do so would effectively place an initial burden upon the opposing party that would directly contradict the procedure for burden shifting expressly set forth in the amended statute. No California case has concluded that a party moving for summary judgment can simply *argue* there is an "absence" of facts to support the opposing party's case. The statute itself states otherwise: ". . . In determining whether the papers show . . . there is no triable issue as to any material fact the court *shall consider all of the evidence* set forth in the papers, . . . and all inferences reasonably deducible from the evidence . . . ." (§ 437c, subd. (c), italics added.) This distinction is the genesis of the reluctance of some courts to follow *Hunter.*

We conclude it would be unreasonable to infer from this record that plaintiffs can produce no other evidence to link Dinwiddie to Robert's illness. This record does not reflect whether any party ever asked Robert specifically whether he had any information placing Dinwiddie at any of his work sites. Robert responded to a single set of standard asbestos interrogatories, but the record reflects no other discovery conducted by Dinwiddie. All we are told is that "[p]laintiff did not testify that he worked at any jobsite at which Dinwiddie was the general contractor." It is undisputed that Dinwiddie asked no questions at the deposition. While we might be able to presume that Robert's answers to questions asked by other parties were complete so far as they went, we can infer nothing at all with respect to questions which were neither asked nor answered.

### *Reconciling the call for "affirmative evidence"*

The question of what sort of evidence is sufficient to shift the burden under California's summary judgment statute is said to be unsettled. An apparent majority of appellate courts accept the proposition that a defendant can meet the burden of proof by showing that a plaintiff has no evidence to support its case. A minority view does not disagree with this general proposition but suggests that a defendant must do more than merely argue there is an absence of evidence and must produce affirmative evidence to show that the plaintiff cannot establish a prima facie case.

The Supreme Court has not directly considered the issue and has persisted in its use of the terminology from the older cases, thus perpetuating the doubts of the courts still contending that the historic requirement of "proving the negative" continues to burden the moving party. In *Ann M.* v. *Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673-674 [25 Cal.Rptr.2d 137, 863 P.2d 207], the Supreme Court remarked: "On review of a summary

judgment in favor of the defendant, we review the record de novo to determine whether the defendant has *conclusively negated* a necessary element of the plaintiff's case or demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial. [Citation.]" (Italics added.) The case before us illustrates the potential for continued confusion resulting from failure to agree upon what must be "shown" in proceedings under the summary judgment statute.

As they did below, plaintiffs rely on cases which have read the statutory amendments much less expansively than did the *Union Bank* and *Hunter* opinions. These cases generally look beyond the mere absence of evidence and ask whether, given the particular circumstances of a case, "factually devoid" discovery responses should be held against the plaintiff. Vague deposition responses in one case were held insufficient to shift the burden because the subject—alleged conspiratorial communications by the defendant—was not one about which the plaintiff would have been expected to have personal knowledge. (*Villa* v. *McFerren, supra,* 35 Cal.App.4th at pp. 748-749.) Another case reasoned similarly as to allegations of undue influence. (*Hagen, supra,* 41 Cal.App.4th 168, 186-187 [also questioning *Hunter*]; see also *Addy* v. *Bliss & Glennon* (1996) 44 Cal.App.4th 205, 213-214 [51 Cal.Rptr.2d 642] [criticizing *Hunter* yet upholding summary judgment on the facts].) On the other hand, pre-*Hunter* precedent finding the burden shifted by factually devoid responses to interrogatories that called on plaintiffs to state *all facts* about alleged fraud and conspiracy (*Union, supra,* 31 Cal.App.4th at pp. 577-578, 580-581) has found continued support among the cases questioning *Hunter* (e.g., *Villa* v. *McFerren, supra,* 35 Cal.App.4th at pp. 748-749).

The criticism of *Hunter* has not been universal. Cases still cite its shifting-by-absence-of-evidence construction approvingly. (See, e.g., *Lopez* v. *Superior Court, supra,* 45 Cal.App.4th at pp. 713-714; *Brantley* v. *Pisaro, supra,* 42 Cal.App.4th at pp. 1594-1598; see also *Prilliman* v. *United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 955-956 [62 Cal.Rptr.2d 142].)

However, it may not be fair to say there is an opposing minority view contrary to the logic of *Union Bank* as it was extended by *Hunter. Hagen, supra,* 41 Cal.App.4th at page 186, which is often cited for its criticism of the expansive boundary delineated by *Hunter,* actually urges caution more than disagreement: "We cannot agree with those who may be understood to suggest that a moving defendant may shift the burden simply by suggesting the possibility that the plaintiff cannot prove its case. It is clear to us, from the requirement of the 1992 amendment that a defendant have 'shown that one or more elements of the cause of action . . . cannot be established'

(Code Civ. Proc., § 437c, former subd. (n)(2); Stats. 1992, ch. 1348, § 1), that a defendant must make an affirmative *showing* in support of his or her motion. Such a showing connotes something significantly more than simply 'pointing out to the . . . court' that 'there is an absence of evidence': before the burden of producing even a prima facie case should be shifted to the plaintiff in advance of trial, a defendant who cannot negate an element of the plaintiff's case should be required to produce direct *or circumstantial evidence* that the plaintiff not only does not have but cannot reasonably expect to obtain a prima facie case." (*Hagen, supra,* 41 Cal.App.4th at p. 186, second italics added.)

█ We agree with *Hunter* that the *circumstantial evidence* which would be required by *Hagen* can consist of "factually devoid" discovery responses from which an absence of evidence can be inferred. And we also agree with the Sixth District's view in *Hagen* that the burden should not shift without stringent review of the direct, circumstantial and inferential evidence. Reconciliation of the two views is not difficult once the inferential reasoning expressly permitted by section 437c is considered.

█ However, we need not decide whether the more cautious view is the better one, for the ruling here was incorrect even under the more circumspect approach. The deposition and standard interrogatories in this case did not contain questions aimed specifically at the presence or absence of Dinwiddie at jobsites, and neither of these discovery devices was comparable to an "all facts" interrogatory on the subject. Dinwiddie's presence was key to liability, and Dinwiddie could have pursued further discovery. It is entirely possible plaintiffs could have supplied further information concerning Dinwiddie. After all, their answers to the standard interrogatories detailed over 100 jobsites and work dates over a period of 42 years. And Robert's subsequent deposition, which Dinwiddie attended, spanned five days. This situation is easily distinguished from the cases on which Dinwiddie relies, in those cases the courts could infer from an incomplete or evasive reply that the plaintiffs had no other facts to support their case.

If Dinwiddie's expansive interpretation of the postamendment summary judgment cases were accepted, the initial burden of producing evidence could be placed upon the opposing party by mere argument. This would not only contradict the express terms of the statute but would also effectively short-circuit traditional discovery. While we agree that summary judgment is indeed more obtainable under the amended statute, we also point out that its initial burden of producing evidence expressly resides with the moving party and cannot be shifted without the "evidence and inferences" described by the statute. Dinwiddie's motion, unlike the motions in *Union Bank* and *Hunter*,

relied upon argument rather than upon evidence. This was insufficient to support a reasonable inference that plaintiffs could not produce further evidence to support an element crucial to their claims. Accordingly, the burden never shifted to plaintiffs, and summary judgment should not have been granted.

### DISPOSITION

The judgment is reversed.

Kline, P. J., and Ruvolo, J., concurred.